## Richmond.

### NIEMEYER AND ALS. V. WRIGHT.

#### January 27.

1. A statute containing a prohibition and a penalty makes the acts which it punishes unlawful; and the same may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.

2. Conceding the general rule to be as above stated, the mere imposition of a penalty by a statute for doing or omitting to do an act, does not of itself, in every case, necessarily imply an intention by the legislature, that every such contract in contravention of the statute shall be void in the sense that it is not to be enforced in a court of justice.

3. The acts of March 29th, 1871, Code of 1873, ch. 227, and of March 29th, 1877, acts of 1876–77, ch. 249, which requires under heavy penalties certain things to be done by persons selling commercial manures, does not avoid the contract for such sale; and a party selling the said manures may recover upon such contracts, in an action at law, though he has not complied with the directions of the statutes.

This was an action of assumpsit in the circuit court of the city of Portsmouth, brought by Niemeyer, Etheridge & Brooks, partners doing business in the city of Portsmouth, against V. Logan Wright, to recover the amount of an account for fertilizers and of a note for $134, the whole amounting to $833.50. In the account, besides the note, were two items, one for $40 and the other for $20, for an article called kainit; the rest of the account was for guano; and the only marks or labels on the bags containing the guano

were on some of them, " Warranted genuine No. 1 Peruvian guano, purchased from the Peruvian government, imported direct into the United States by J. J. Barrett "; and on the others, "Peruvian guano, purchased from the Peruvian government, imported by J. J. Barrett." The bags or sacks contained no other marks thereon indicating the contents thereof or the component parts of said contents.

On the trial of the cause, after the evidence had been introduced, the defendant moved the court to give the following instructions to the jury :

"If the jury believe from the evidence, that the substance or material sold to the defendant by the plaintiffs and charged at $60 per ton of two thousand pounds in their account under the name of 'guano' was never labelled with any analysis whatever of its contents, or that none of its component parts were in any manner indicated on the bags or sacks containing said substance; and that said substance was sold as a commercial manure to said defendant; and that no samples thereof were ever submitted to the commissioner of agriculture of this State for analysis, the said plaintiffs cannot recover for said commercial manure in this action."

The court gave the instruction, and the plaintiffs excepted. The jury found a verdict in favor of the plaintiffs for $191.10—the amount of the note and the two parcels of kainit; and the plaintiffs asked for a new trial on the ground of the misdirection of the court in giving the said instruction to the jury; but the court overruled the motion and rendered a judgment upon the verdict; and thereupon the plaintiffs applied to a judge of this court for a writ of error; which was awarded.

*Walke* and *Old,* for the appellants.

*Ellis* and *Thom,* for the appellee.

Niemeyer and als. v. Wright.

BURKS, J., delivered the opinion of the court.

The instruction complained of here, which was given to the jury by the learned judge on the trial of this case in the court below, is based on the assumption, that if the bags or sacks containing the guano sold by the plaintiffs to the defendant were not labelled as required by the act of March 29, 1871, or if before the sale no samples of the fertilizer were submitted to the commissioner of agriculture to be tested by him, as the act of March 29, 1877, enjoins, the contract, which was the ground of the action, was illegal and void, and therefore no recovery could be had upon it.

The first section of the act of 1871 (Acts 1870–71, ch. 227 ; Code of 1873, ch. 86, § 48) requires that all commercial manures and artificially manufactured or manipulated fertilizers, brought or manufactured in this State for sale, and sold, or kept for sale therein, shall have permanently affixed to every sack, bag, barrel, box or other package thereof, a stamped or printed label, which shall specify legibly the name or names of the manufacturer or manufacturers, his, her, or their place of business, the net weight of such sack, bag, barrel, box, or other package, the component parts of such manure or fertilizer, and the per centage, by weight, which it contains of certain constituents specified.

The second section imposes a fine of one hundred dollars for the first offence, and two hundred dollars for the second and each succeeding offence, on any person who shall sell, or keep for sale, any commercial manures, or artificially manufactured or manipulated fertilizers, not labelled in accordance with the requirements of the act, or shall affix any label to any sack, bag, barrel, box, or other package, not expressing truly the component parts of said manures or fertilizers, or expressing a larger per centage of the con-

stituents, or either of them mentioned in the first section, than is contained therein.

The fourth section declares that the words used in the act, "commercial manures, artificially manufactured, or manipulated fertilizers," shall be taken and construed to include all manures and fertilizers which shall be sold for a greater price than three-fourths of one cent per pound.

The act of March 29, 1877 (acts 1876-77, ch. 249), establishes a department of agriculture, mining, and manufacturing for the State, to be under the control and management of an officer designated "commissioner of agriculture."

Section 4 of the act directs that this officer shall have under his charge the analysis of fertilizers sold to be used for agricultural purposes in this State, and enacts that a fair sample of every brand of fertilizers sold to be used in the State shall be first submittted to him, and when he shall have thoroughly tested the same, which it shall be his duty to do, if he shall find the same to be of no practical value, he shall summon before him the parties interested, and give them a full and sufficient opportunity of correcting any injustice which may have been done to them by mistake, accident, or otherwise; and if it shall still be found that the brand is of no practical value, the sale of the same for use in this State as a fertilizer shall be prohibited. A fine not less than one hundred dollars nor more than one thousand dollars for each offence is imposed on any person violating the provisions of the act, by selling any fertilizer to be used in this State, without first submitting a fair sample of the same to the said commissioner, under rules prescribed by him.

It is not pretended that either of these statutes expressly forbids the sale of guano and other fertilizers, or declares in terms that such sale shall be void unless the provisions concerning the label and analysis shall have been first com-

plied with; but the contention is, that the illegality impliedly results from the penalties imposed.

It is conceded that, as a general rule, a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so (*Middleton* v. *Arnolds*, 13 Gratt. 489), but it does not *necessarily* follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. The question is, in a great measure, one of legislative intent, and its determination depends, as in other cases, on the construction of the statute.

Such was the conclusion of the supreme court of the United States in *Harris* v. *Runnels*, 12 How. U. S. R. 79 (decided in 1851), after an examination of the authorities on the subject. In delivering the opinion of the court, Mr. Justice Wayne adverted to the distinction taken in the English cases, when the rule which avoids a contract made in contravention of a statute is to be applied to statutes made for the protection of the revenue, and when the same rule is to be applied to those statutes which are made for the protection of the public from moral evils or from those which, it is known by experience, society must be guarded from by preventive legislation; and after stating the rule as laid down by Baron Parke in *Cope* v. *Rowland*, 2 Mees. & Welsb. R. 149, that if *the contract be rendered illegal*, it can make no difference, in point of law, whether the statute which has made it so has in view the protection of the revenue or any other object, said, that "whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it is *not to be taken for granted* that the legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application is denied. It is true

that a statute, containing a prohibition and a penalty, makes the act which it punishes *unlawful*, and the same may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.

" It is not necessary, however, that the reverse of that should be expressed in terms to exempt a contract from the rule. The exemption may be inferred from those rules of interpretation, to which, from the nature of legislation, all of it is liable when subjected to judicial scrutiny. That legislatures do not think the rule one of universal obligation, or that, upon grounds of public policy, it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which contracts in violation of them are void or not, according to the subject matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practices a fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined, before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

This full extract from the opinion shows the principles on which the decision of the court was based. The action was upon a note given for the price of slaves, which, as admitted by the pleadings, had been brought into the State

of Mississippi and sold in violation of a law of the State, and the defence was that the contract of sale and the note were void because they were in contravention of the statute. The object of the statute was to prevent the introduction of convicts into the State, and to effect that object the importation of all slaves was subjected to regulation. The act declared that *it should not be lawful* (Hutchinson's Mississippi Code, 1798 to 1848, p. 513) for any person to import slaves into the State without having previously obtained a certificate, duly acknowledged, &c., of two freeholders in the county of the State or territory from which the slaves were brought, descriptive of the slaves, and that they had not been guilty or convicted of any felony. The seller was required to register the certificate in the orphans court; and it was further enacted that if any person *sell* or *purchase* any slave or slaves without having complied with the provisions of the act, he should pay one hundred dollars for every slave so sold or purchased.

There were other provisions of the act which need not be noticed. It is to be observed that while the act declared that it "should not be lawful" to import slaves without complying with the regulations prescribed, it does not declare in terms that a contract in contravention of the statute should be void. It only imposed a penalty on seller and buyer for a violation of the provisions. The supreme court was of opinion, upon a consideration of the whole statute, that notwithstanding the penalty inflicted, it was not the intention of the legislature to *make the contract void*.

There are adjudications of this court to the like effect. The statute "against conveying or taking pretensed titles," enacted in 1786 (see 1 R. Code of 1819, ch. 103), continued in force until its repeal at the revisal of 1849. That act *expressly prohibited* the conveying or taking "pretensed titles," and inflicted upon the offender a forfeiture of the whole value of the lands; and yet it was uniformly held

by this court, that although the conveyance was prohibited under the penalty of forfeiture, it was not therefore void, nor were the obligations for the purchase money of the land so conveyed invalid. *Middleton for, &c.,* v. *Arnolds,* 13 Gratt. 489, and cases there cited.

In *Tabb* v. *Baird,* 3 Call. 481, Judge Roane said, " It is to be observed that the act against pretensed titles does not *declare* the conveyances therein inhibited *to be void.* It leaves the effect and legal operation of such conveyances to be decided by the laws relative to the subject."

These cases are sufficient to show that conceding the general rule to be, as it has been stated, the mere imposition of a penalty by a statute for doing or omitting to do an act, does not of itself, in every case, necessarily imply an intention of the legislature that every contract in contravention of the statute shall be void " in the sense that it is not to be enforced in a court of justice."

While the decisions in *Redd* v. *Jones,* 30 Gratt. 125, and *Wroten's Assignee* v. *Armat and others,* 31 Gratt. 228, are not directly in point, they have a strong bearing on the question under consideration. See also *Larned* v. *Andrews,* 106 Mass. R. 435 ; *Aiken* v. *Blaisdell,* 41 Verm. R. 655 ; *Banghorne* v. *Westlake,* 36 Iowa R. 547 ; *Watrous* v. *Blair,* 32 Iowa R. 58 ; Benjamin on Sales, §§ 535-540.

The sections (already referred to) of the acts of 1871 and 1877, show nothing beyond the duty enjoined upon the manufacturer and vendor of the fertilizers, and the penalties imposed for non-compliance with the provisions of the several acts. The penalties are pecuniary fines, and there is not to be found anywhere in either of the acts any express prohibition of sale (except where the commissioner of agriculture has pronounced a fertilizer of no practical value), nor any declaration that contracts connected with, or arising out of sales made without compliance with the provisions of the acts, shall be void. But, we think, the

third section (not before referred to) of the act of 1871, shows very clearly, that it was not the intention of the legislature to render the contracts between the seller and purchaser void. By that section it is enacted, "that any purchaser of commercial manures or artificially manufactured or manipulated fertilizers, bearing labels as provided for in the first section of this act, who shall be injured or defrauded by the contents of the sacks, bags, barrels, boxes, or other packages, not conforming in quality and quantity to the labels thereon, may recover from the seller or sellers thereof, by proper action at law, an amount equal to the purchase money of such manure or fertilizer."

Now, the special remedy here given to the purchaser is in effect equivalent to a legislative declaration of a forfeiture by the seller to the purchaser, in the particular case provided for, of the whole of the purchase money of the fertilizer sold, without regard, it would seem, to the *extent* of the injury sustained; and the infliction of the forfeiture in one aspect is the exclusion of it in any other. The remedy is given only when the purchaser is injured or defrauded by means of a false label; and this implies that where there is no injury from such cause it is intended that the contract shall operate between the parties as in ordinary cases. When, in framing the statute, the mind of the legislature was engaged in devising means for the protection of the purchaser, and hence a special remedy was provided for injury inflicted by false labels, if the intention had been, as a means to the same end, to render void every contract made in contravention of the act, that intention would doubtless have been plainly expressed in terms.

There is some force in the argument addressed to us, that the express prohibition in the act of 1877 of the sale of a fertilizer ascertained by the commissioner of agriculture to be of no practical value, implies that no absolute prohibition was intended under different circumstances, and that

while in the act of March 15th, 1850 (acts of 1849-50, ch. 64), it was declared in expressed terms "that it shall not be lawful" to sell guano and plaster paris without inspection, &c., as provided, no such language is to be found in the statute of 1871, which was substituted for it. But independently of these suggestions, we are of opinion, for the reasons already stated, that it was not the intention of the legislature that contracts in contravention of the statutes which have been considered should be void, in the sense that they should not be enforced in a court of justice, and therefore that the circuit court erred in the instruction given to the jury.

The construction we have given these statutes, severely penal as they are, seems to us to be in accordance with the rules of the judicial interpretation applicable to such cases and to be subservient to the ends of justice; but if the acts as construed should be deemed inadequate to the prevention of the mischief against which they are directed, the corrective power is in the legislative department of the State.

The conclusion already reached makes it unnecessary to decide the question raised by the plaintiff in error, whether the title of the act of 1871 is in conformity with the constitution of this State (art. 5, § 15), which declares that "no law shall embrace more that one object, which shall be expressed in its title."

The judgment of the circuit court must be reversed and the cause remanded for a new trial.

The judgment was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed

Niemeyer and als. v. Wright.

with the record, that if the substance or material mentioned in the account filed with the declaration in this cause was sold by the plaintiffs to the defendant, although the sacks or bags containing said material were not labelled in accordance with the requirements of the act of the general assembly, entitled "an act to require manufacturers of fertilizers to label their packages with a correct analysis of the same," approved March 29th, 1871, or no samples of said material were submitted before the sale thereof to the commissioner of agriculture for analysis, according to the provisions of the act entitled "an act to establish a department of agriculture, mining, and manufacturing for the State," approved March 29th, 1877, yet the said contract of sale was not for these reasons, or either of them, illegal and void, in the sense that it cannot be enforced in a court of justice; and that therefore the instruction given to the jury by the said circuit court on the trial of this cause is erroneous, and the judgment aforesaid is also erroneous; therefore, it is considered by the court that the said judgment be reversed and annulled, the verdict of the jury set aside and a new trial be had of the issue joined, and that the plaintiffs in error recover against the defendant in error their costs by them expended in the prosecution of the writ of error aforesaid here; and this cause is remanded to the said circuit court for a new trial of the issue and for further proceedings, in order to final judgment, in conformity with the opinion hereinbefore expressed, which is ordered to be certified to the said circuit court of the city of Portsmouth.

JUDGMENT REVERSED.