SEBASTIAN DITZELL and LEON S. DITZELL, Partners Doing Business as the KANSAS CITY FUEL OIL COMPANY, Appellants, v. CHARLES V. SHOECRAFT, Respondent.*

Kansas City Court of Appeals. May 25, 1925.

1. **STATUTES: Construction: In Construction of Statute Its Purposes, Evils, History and Practical Intent Must be Examined.** In construing a statute, its purposes, evils it is intended to correct and extent of whole act, history and practical intent must be examined.

K. C. Fuel Oil Co. v. Shoecraft.

2. **NAMES: Every Person or Partnership, in Absence of Fraud, May Use Any Name in Transacting Business.** The right to do business is inherent in every person and partnership and, in the absence of fraud, any name may be used.

3. **CONSTITUTIONAL LAW: Legislature Has Power to Regulate But Not to Prohibit Business.** Legislature has power to regulate but not to prohibit business.

4. **NAMES: Statutes: Construction: Purpose and Scope of Fictitious Name Statute Stated.** Under Session Laws of 1919, p. 622, sec. 7, defining purpose of fictitious name statute sections 13276-13280, Revised Statutes, 1919, intent of Legislature was to restrict penalty for violation of statute to a fine or imprisonment, or both, as provided by section 3701, Revised Statutes 1919, and violators thereof, in absence of fraud or bad faith, were not to be further punished by having all their rights forfeited.

5. **STATUTES: Where Acts Sought to be Regulated by Statute Are Lawful in Themselves, the Penalty Provided Thereby is Directed Only Against Person Violating the Statute.** Where acts sought to be regulated are in themselves lawful, and no qualification therefor required, the penalty is directed only against the person who violates the statute.

6. **NAMES: Indorsee Who in Good Faith received Trade Acceptance Without Knowledge of Failure of Consideration, Held Entitled to Recover Though Carrying on Business Under a Fictitious Name in Violation of Statute.** In an action to recover upon a trade acceptance, for which acceptor received no consideration but was indorsed as collateral security for merchandise purchased, indorsees, taking acceptance without notice of failure of consideration, *held* entitled to recover thereon, notwithstanding they carried on and transacted business under a fictitious name without registering the same, as required by section 13277, Revised Statutes 1919.

---

*Corpus Juris-Cyc. References; Constitutional Law, 12 C. J., p. 921, n. 60; p. 922, n. 62, 63. Names, 29 Cyc., p. 270, n. 43. Partnership, 30 Cyc. p. 419, n. 70. Statutes, 36 Cyc., p. 1110, n. 54, 56; p. 1128, n. 54; p. 1138, n. 47; p. 1185, n. 48.

Appeal from the Circuit Court of Atchison County.— *Hon. John M. Dawson,* Judge.

REVERSED AND REMANDED *(with directions)*.

*Harrison Johnston, Jas. F. Gore* and *L. D. Ramsay* for appellant.

*Walsh & Aylward, Morrison, Nugent, Wylder & Berger* as *Amicus Curiae; John Gerlash* and *W. C. Ellison* for respondent.

ARNOLD, J.—This is an action to recover the sum of $250, based upon a trade acceptance of a draft.

The draft, of date April 27, 1921, was drawn by and made payable to a company designated as The Producers Consolidated Oil Co. Plaintiffs were partners doing a wholesale business in oil products under the firm name of Kansas City Fuel Oil Co., with headquarters at the city of Kansas City, Mo. In the regular course of business they sold large quantities of gasoline and kerosene, one of their purchasers being a certain retail corporation known as the Producers Consolidated Oil Company, a Nebraska corporation. This last-named company deposited with plaintiffs as security for their past account and future sales, before due, certain trade acceptances, among them one signed by defendant, which is the one involved in this suit.

The Producers Oil Company became insolvent, at which time their indebtedness to plaintiffs amounted to $3,796.20. Plaintiffs thereupon filed suit against defendant as the drawee and acceptor of one of these trade acceptances in the sum of $250. The cause was tried to the court, a jury having been waived, and judgment was for defendant. Plaintiffs appeal.

The cause was presented to the court upon an agreed statement of facts, though there are some facts not included in the statement which we deem necessary to a clear understanding of the case.

In 1921, the Producers Oil Company organized a large and partially successful chain of filling stations throughout Missouri and Kansas. In order to secure local interest in the project and to raise capital for

financing said filling stations, advance agents of said company would offer to local investors and consumers a certain contract or so-called "purchase order" by which the investor was to get double the value of gasoline when the station should be built, in return for signing a six months acceptance for a given amount. A number of persons in and around Tarkio, Mo., signed such contracts and trade acceptances. Defendant, on April 27, 1921, signed and delivered to the Producers Oil Co. the six months acceptance sued on herein. The Tarkio filling station was never completed, and the Producers Oil Co. never delivered to defendant or others in the Tarkio district the oil for which the acceptances were taken.

On June 17, 1921, the Producers Oil Company's account with plaintiffs, being of considerable size, and more purchases being contemplated, plaintiffs asked for security and the president of the Producers Company endorsed and delivered to plaintiffs, as collateral security, a number of the said acceptances, including that of defendant. This suit was instituted to collect on said acceptance.

The agreed statement of facts is brief, and as it greatly simplifies and brings out the issues involved, it is set out in full herein, as it appears in the Bill of Exceptions.

"First: It is agreed by the parties that on the 17th day of June, 1921, plaintiffs as partners, were and for three months next prior and subsequent thereto had been transacting business in the purchase and sale of petroleum products, in Kansas City, Missouri, under and in the name of 'The Kansas City Fuel Oil Company,' without complying with any of the provisions of section 13277, Revised Statutes 1919, pertaining to the registration of fictitious names in the office of the Secretary of State, but did so register prior to bringing this suit, to-wit on December 27, 1922.

"Second: It is agreed that on the said 17th day of June, and under the said name of 'The Kansas City Fuel

Oil Company,' the plaintiffs in the course of their said business, and in Kansas City, Missouri, obtained as hereinafter set out, from the 'Producers Consolidated Oil Company' the draft and acceptance, and endorsement thereon, involved in this suit, which said draft, signed by defendant herein and now unpaid, is in words and figures following:

"Tarkio, Mo., April 27, 1921.

"$250

"Six months from date hereof, pay to the order of The Producers Consolidated Oil Company, two hundred fifty and no-100 dollars ($250), at the office of Tarkio Valley Bank, Tarkio, Mo. for Petroleum Products sold to drawee. With interest hereon at the rate of eight per cent from date.

"To CHARLES V. SHOECRAFT,
     "Tarkio, Mo.
"THE PRODUCERS CONSOLIDATED OIL COMPANY,
          "By R. R. SIBLEY, Pres."

"It is further agreed that on the face of said draft are the following words of acceptance:

"Accepted April 27, 1921. This obligation arises out of the actual purchase of goods from drawer.

"(Signed)    CHARLES V. SHOECRAFT."

"And on the back of said draft are the following words 'The Producers Consolidated Oil Co.    R. R. Sibley, Pres.'

"Third: It is agreed that this draft, acceptance and endorsement thereon with others were received and accepted as aforesaid by plaintiffs from said Consolidated Oil Company (through its president, R. R. Sibley, who represented that they were sound and good), under a contract of the date and place aforesaid, between plaintiffs in their business name aforesaid and said Consolidated Oil Company, by which contract plaintiffs were to hold said drafts and acceptances as collateral security for the payment to them of a certain unpaid indebtedness

of some $3796.20, then and thereafter incurred by the said Producers Consolidated Oil Company, and still unpaid, for petroleum products sold by plaintiffs in their business name aforesaid in Kansas City, Mo., at various dates between December 1, 1920 and June 29, 1921.

"Fourth: It is agreed that as to The Producers Consolidated Oil Company, the defendant would have a complete defense to said draft and acceptance thereof, on the ground of the entire lack of consideration; but it is further agreed that the plaintiffs when they received the acceptance sued on had no knowledge or notice whatever of said lack of consideration, or of any other facts which would create an infirmity in said acceptance or draft."

At the request of defendant the court found the facts to be, as follows:

"First: The court finds the facts to be that on the 17th day of June, 1921, plaintiffs as partners were, and for more than three months next prior and subsequent thereto, had been transacting business in the purchase and sale of petroleum products, in Kansas City, Missouri, under and in the name of 'The Kansas City Fuel Oil Company,' without complying with any of the provisions of section 13277, Revised Statutes 1919, pertaining to the registration of fictitious names in the office of the Secretary of State.

"Second: The court finds the fact to be that on said 17th of June, and under the name of The Kansas City Fuel Oil Company, the plaintiffs, in the course of their said business, and in Kansas City, Missouri, obtained from the Producers Consolidated Oil Company, the draft and acceptance thereof involved in this suit.

"Third: The court finds the fact to be that said draft and acceptance were received and accepted by plaintiffs from said Consolidated Oil Company under a contract between them, by which plaintiffs were to hold the same as collateral security for the payment of a certain debt arising out of this business aforesaid.

"Fourth: The court finds the fact to be that the sole consideration for the execution of said acceptance by defendant was as set forth in the papers in evidence, called the 'Purchase Order' and 'Receipt,' which were executed concurrently with the execution of the acceptance, and all were parts of one transaction.

"Fifth: The court finds the fact to be that the filling station mentioned in the 'Purchase Order,' was never established by said Producers Consolidated Oil Company, or by anyone for them; that no petroleum products of any kind were ever supplied or tendered by said company to defendant, and defendant has not directly or indirectly, received any consideration for said acceptance, and said company has never offered to return said acceptance to defendant, nor any money in lieu thereof, and it is no longer a going concern.

"Sixth: The court finds the facts to be that said acceptance was not delivered to plaintiffs as collateral security for the payment of any debt in the form of a book account, but was delivered as collateral security to secure the payment of a promissory note or other obligation which was then and there executed by said Producers Consolidated Oil Company to plaintiffs in lieu of such book account.

"Seventh: The court finds the fact to be that the evidence fails to show that plaintiffs, when they received the acceptance sued on, had any knowledge of said 'Purchase Order,' or of any other fact creating an infirmity in said acceptance, or constituting a failure of consideration."

The court declared the law to be as follows:

"(a) The court declares the law to be that Article III of chapter 122, Revised Statutes 1919, commonly known as the fictitious-name statute is a constitutional enactment; and is expressly declared by the Legislature to be a regulation of business done under fictitious names, rendered necessary for the protection of the public against fraud and deceit.

"(b) The court declares the law to be that the name, 'Kansas City Fuel Oil Company' was a fictitious name as used by plaintiffs in the transaction of their business herein involved, and as defined by section 13276 and section 13280 of said fictitious-name statute.

"(c) The court declares the law to be that under the facts hereinbefore recited, said section 13276 made it unlawful and section 13279 made it a misdemeanor for plaintiffs to receive the acceptance in suit under a contract to hold it as collateral security to secure the payment of either a book account made in the transaction of their business aforesaid, or a note executed by the Producers Consolidated Oil Company to them in lieu of such account.

"(d) The court declares the law to be that the transactions by which plaintiffs obtained, and since have held the acceptance in suit, and by which they agreed to hold it as collateral security for a debt, were business transactions which were forbidden and made a misdemeanor by the sections aforesaid.

"(e) The court declares the law to be that if a person engaged in a business transaction in violation of a statute making it a misdemeanor punishable by fine or imprisonment, then no right, title or interest is created in him thereby, and no claim founded on such criminal transactions, or arising therefrom, will be enforced by the courts, as to him.

"(f) The court declares the law to be that under all the facts in the case, plaintiffs did not acquire any right or title to the acceptance in suit, and the finding and judgment should be for defendant.

"(g) The court declares the law to be that in an action by an alleged indorsee of a negotiable instrument, he will not be allowed to interpose the defensive plea of innocent purchaser before maturity and for value, without notice of infirmities, for the purpose of cutting out the defense of failure of consideration, if it appears that his only claim of title was acquired through a transac-

tion in which he participated that was forbidden by statute and denounced as a misdemeanor.''

Plaintiffs motions for new trial and in arrest of judgment being unavailing, this appeal followed. It is contended that since, under the facts, plaintiffs acquired their claim of title to the acceptance before maturity and for value, and without notice of infirmity, they became innocent purchasers for value under the provisions of the Negotiable Instrument Law, though, in becoming such owners, they committed a misdemeanor; and that by right, they may interpose such plea for the purpose of compelling defendant to pay the obligation.

Plaintiffs further contend that although the fictitious-name statute makes it unlawful to transact any business in this State in a fictitious name, without first complying with the provisions prescribed therein which make the transgression thereof a misdemeanor, yet it does not affect the validity of the business transacted. In other words, the only consequence of a violation of the statute is the personal punishment prescribed, and the transaction itself is not tainted with crime.

On the other hand, defendant insists that if a person, in a purely fictitious name, accepts and retains a pledge of collateral, a negotiable instrument, in a business transaction of which the acceptance of the collateral, or pledge, forms an integral part, and does this without having complied with the provisions of the said statute, the transaction is a nullity, and title to the instrument does not pass, and he will not be permitted to base a cause of action thereon because, under such circumstances, he is not an innocent purchaser. In fact, he is no purchaser at all.

The so-called ''fictitious-name'' statute is found in Article III, chapter 122, Revised Statutes 1919, and is embraced in sections 13276 to 13280, inclusive. Section 13276 declares: ''That every name under which any person shall do or transact any business in this State, other than the true name of such person, is hereby de-

clared to be a fictitious name, and it shall be unlawful for any person to engage in or transact any business in this State without first registering same with the Secretary of State as hereinafter required.''

Section 13277 provides: ''Every person who shall engage in business in this State under a fictitious name, or under any name other than the true name of such person shall, within five days after the beginning or engaging in business under such fictitious name, register by verified statement of all parties concerned, upon blanks furnished by the Secretary of State, such name in the office of the Secretary of State, together with the name or names and the residence of each and every person or corporation interested in or owning any part of said business, and setting forth the exact interest therein of each and every such person or corporation: Provided, that if the interest of any person named in the original registration of such fictitious name shall change or cease to exist, or any other person shall become interested therein, such fictitious name shall be re-registered within five days after any change shall take place in the ownership of said business or any part thereof as set forth in the original registration, and such re-registration shall in all respects be made as in the case of original registration of such fictitious name: Provided, that the provisions of this section shall not apply to farmers' mutual insurance companies nor farmers' mutual telephone companies.''

Section 13278. Registration fee—For the registration of each fictitious name as in this article required, there shall be paid into the State treasury a fee of two dollars.

Section 13279. Penalty for failure to register—Any person who shall engage in or transact any business in this State under a fictitious name, as in this article defined, without registering such name as herein required, shall be deemed guilty of a misdemeanor.

Section 13280.   Definition of word—For the purposes of this article the word "person" shall be construed to include both male and female, plural and singular, partnerships, associations and corporations, as the circumstances of the case may require.

Under points and authorities, plaintiffs charge that the court erred in admitting evidence concerning the failure of consideration; and in giving respondent's declarations of law (a) to (g) inclusive, and, in effect, declaring void and forfeited all contracts and transactions of those engaged in business using a trade name without registering it.   In support of this contention it is asserted that the language and purpose of the act proclaim that it is a regulation to secure registration, not to restrict business; an enactment for the benefit of those extending, not those securing credit.   It is an elementary rule that in construing a statute, its purpose must be examined, the evils it is intended to correct, and the intent of the whole act, its history and practical intent.

It has been held that the right to do business is inherent in every person and partnership and in the absence of fraud, any name may be used.   [Palmer v. Leivy (Mo. App.) 205 S. W. 244.]   The powers of the Legislature are narrowly confined.   It has power to regulate but not to prohibit business.   The purpose of the act is clearly defined in the legislative declaration relative thereto, which is found in Session Laws of 1919, page 622, section 7, as follows:

"Whereas there is no adequate law in this State governing the transaction of business under a fictitious name, and whereas hundreds of thousands of dollars are annually lost to honest business by the use of fictitious names, and whereas the use of a fictitious name affords a convenient vehicle for the perpetration of fraud, an emergency is declared to exist within the meaning of the Constitution; therefore this act shall take effect and be in force from and after its approval."

Nothing could be more clear than this plain declaration as to the purpose and scope of the act. Its history may be stated briefly as follows: It was introduced into the House of Representatives as House Bill No. 675, and, as introduced, contained sections 1 to 7. Section 3 made failure to register, as required by the statute a complete defense for the recovery of money by persons using a fictitious name. This section, in its entirety, was stricken out by the House, and the bill was passed with its original sections intact save section 3. The original bill, also, in section 5 thereof, made the violation of the act a misdemeanor punishable by a fine of $10 to $50; this section, however, was amended by striking out the fine, thus leaving a violation of the act a misdemeanor, which under the general statute carries a maximum fine of $1,000, or a year's imprisonment, or both. [Sec. 3701, R. S. 1919.]

It seems evident to us that the intent of the Legislature was to restrict the penalty for violation of the statute to a fine or imprisonment, or both, as provided in misdemeanor cases (section 3701) and that those violating the act were not to be further punished by having all their rights forfeited.

On the question of the validity of contracts entered into by an individual, or partnership, under an assumed name without complying with the statute, authorities are divided. A few jurisdictions, in construing similar statutes, hold the contracts void. But a majority, Missouri included, have held that such a statute containing a prohibition and making its violation a misdemeanor, is for the benefit of those giving credit to one using the fictitious or assumed name, and not for the protection of those procuring credit from persons violating the law. It has also been held, and is the rule in this State that there must be some bad faith shown in the use of such a name to work a forfeiture of the right to recover. In the case at bar, bad faith or fraud is charged, but such charge is made against the Producers Oil Company, a Nebraska

corporation with whom defendant dealt, and not against plaintiffs, between whom and defendant there was no business transacted.

We need not go outside of the decisions in Missouri for a solution of the question here involved. This court held in favor of plaintiffs' contention in Reitherman v. Wheeler, et al., 247 S. W. 222, on all questions arising in the present appeal, and the law of this State, as declared in opinions of our appellate courts is therein reflected. The facts in that case were very similar to the one at bar. The suit was on a promissory note in the sum of $325, dated September 16, 1919, payable six months after date to the order of M. Anderman and signed by the defendants. The note bore the endorsement, "Pay to Continental Audit Company, or order. M. Anderman."

The answer in that case contained a general denial and allegations that the plaintiff was doing business in this State under a fictitious name, to-wit, the Continental Audit Company, in violation of the fictitious-name statute. The facts showed that the note was purchased by plaintiff from M. Anderman through her husband, Leo Anderman, as her agent; that at the time plaintiff acquired the note he did not know of any defects in the title. At the close of all the testimony the court gave a peremptory instruction to the jury to find for plaintiffs and defendants appealed. In affirming the judgment the court said:

"Defendants contend that because plaintiff was doing business under a fictitious name without having complied with the laws of the State of Missouri concerning the registration of such a name, sections 13276 to 13280, Revised Statutes 1919, inclusive, 'he is estopped from giving evidence of his unlawful acts or from profiting from his unlawful acts at the expense of innocent people.' Plaintiff transacted no business with defendants under the fictitious name, and the law contemplates that there must be some bad faith in the use of such a name in or-

der for a suit involving the transaction to go against a person making such use. [Palmer v. Leivy, — Mo. App. —, 205 S. W. 244, 248.]''

The St. Louis Court of Appeals in the Palmer case declared the same principles of law and arrived at the same conclusion. And in the case of Central Mo. Trust Co. v. Smith, 247 S. W. 241, 243, this court held:

''We do not think it can be said that, as this is a suit directly on the note and not to enforce a pledge of it, the statute (section 6496) does not apply. It applies not only 'in actions for the enforcement of liens,' but also 'in any other case when the validity of such lien is drawn in question.' The statute is intended to prevent usurious practices, and should be liberally construed so 'as to suppress the mischief and advance the remedy.' [Keim v. Vette, 167 Mo. l. c. 401, 67 S. W. l. c. 226.]''

In the case at bar the action is based upon the acceptance of a draft, and not upon the contract between defendant and the Producers Oil Company. The reasoning in the Trust Company case applies and we must hold, therefore, that the endorsement in the case at bar is not shown to have been tainted with fraud as regards plaintiffs herein.

An examination of the Missouri cases relied upon by defendant shows they are all cases where the undertaking itself was forbidden under the statute, and they are not therefore decisive of the case at bar wherein the undertaking, the acceptance, was in no sense made unlawful by the statute. It is the universal rule applicable to statutes such as the one here involved, that where acts sought to be regulated are in themselves lawful, and no qualification therefor required, the penalty is directed only against the person who violates the statute. [Mandelbaum v. Gregovich, 17 Nev. 87; Reichardt v. Hill, 236 Fed. 817; Aiken v. Blaisdell, 41 Vt. 655; Niemeyer v. Wright, 75 Va. 239; Pangborn v. Westlake, 36 Ia. 546; Fairly v. Wappoo Mills, 44 S. C. 227; Larned v. Andrews,

219 Mo. App.—29.

106 Mass. 435; Ober v. Stephens, 54 W. Va. 354; Taliaferro v. Moffett, 54 Ga. 150.]

For the reasons herein stated, we hold the court erred in its declarations of law as applied to the facts herein, and in finding for defendant. The judgment is therefore reversed and the cause remanded with instructions to enter judgment for plaintiffs in the sum of $250 and interest from April 27, 1921, the date of the acceptance in suit. It is so ordered.

All concur.

## ON REHEARING.

ARNOLD, J.—We have read with much interest the very able argument of respondent on rehearing and and have carefully considered the citations therein. After so doing we adhere to the conclusions reached in the former opinion, following the rule laid down in Reitherman v. Wheeler et al., 247 S. W. 222, an opinion by this court which we are not prepared to overrule. That case has the support of the Supreme Court in O'Bannon v. Wydick, 281 Mo. 478, wherein is adopted the opinion of the Springfield Court of Appeals in the same case, 198 S. W. 432. We quote from the last-named opinion at ᵽ 434, as follows:

"The respondent cites the case of McConnon & Co. v. Haskins, 180 S. W. 21, decided by this court, in which we held that, although a statute requires one peddling medicines to secure a license, the fact that he does not do so does not preclude his collecting for the goods sold, but merely makes him liable to the fine provided for the violation of the statute. That and other cases are not analogous to the question before us, for the reason that the licenses in dispute in those 'cases were made necessary as revenue measures (see 2 Elliott on Contracts, sec. 669), and were not required for the protection of the public. There is another reason why such cases are not analogous, and that is that the substance and essence of the contract made between the peddler and the customer are his goods or things delivered on the one hand

and the promise to pay on the other; whether he has a license or not is a collateral matter, in which the State alone is interested; the possession of the license or the failure to have one neither adds to nor takes away from the article or goods bartered and sold, the essence of the contract.''

We regard the O'Bannon case as the last pronouncement of the Supreme Court on the issues involved herein. We do not find the recent case of State ex rel. v. Cox, 268 S. W. 87, to be in conflict with our conclusions in the case at bar. We adhere to our former opinion herein.

. *Bland, J.,* concurs; *Trimble, P. J.,* absent.