WILLIAM HUGH BAGBY, ET AL., APPELLANTS, v. HOMER L. BLACKWELL, ETC., RESPONDENT.—211 S. W. 2d 69.

Kansas City Court of Appeals. Opinion delivered April 5, 1948.

*Butler Disman* and *Herbert Jacob* for appellants.

576

Spencer, Britt & Benson, Byron Spencer, James T. Britt and Gerald M. Lively for respondent.

578

DEW, J.—Appellants, as plaintiffs below, brought suit against respondent, defendant below, to enjoin defendant from using, and carrying on his furniture business under the name previously adopted and in use by plaintiffs, ''Associated Furniture Distributors'', or any name similar to or in imitation thereof, and defendant filed answer, claiming superior and exclusive right to the use of such firm name, and a cross-petition to enjoin the plaintiffs from the use of same, or similar name in imitation thereof. Upon trial, the court dismissed both the plaintiffs' petition and defendant's cross-petition. The plaintiffs have appealed.

The appellants, hereinafter referred to as the plaintiffs, are some 19 in number, consisting of some partnership firms and some corporations, doing business as a voluntary association under the name of Associated Furniture Distributors. The substance of all of plaintiffs' points of error is that the decree dismissing plaintiffs' petition was against the evidence and the law, and against the weight of the evidence.

Plaintiffs' evidence tended to prove that Myron A. Loewen is and has from its inception, been secretary and treasurer of plaintiffs' association, known as Associated Furniture Distributors, organized in January, 1927. He is also president of a local furniture establishment in Kansas City, which firm is also a member of plaintiffs' association. His office is also the office of the association. It was first organized under the name of Associated Furniture Jobbers, which was changed in 1928 to Associated Furniture Distributors, which name it has continuously used since that date. The original members were ten wholesale furniture dealers, and there have since been changes in the personnel due to death, firm dissolutions and for other causes. Formal written Articles of Association were entered into in 1927. The Articles declared, in part, that the members were to consist of individuals, firms and corporations engaged in purchasing goods in bulk or quantity for resale or distribution to retailers who shall assent to the Articles and By-laws, and pay the prescribed dues; that only one such furniture dealer from each trade territory shall be eligible for membership; that the association, organized for a term of 50 years, shall have no capital stock, but members shall be acquired by voluntary application and represented by a certificate nonnegotiable and nontransferable; that its affairs should be conducted by its selected officers and agents; that it is formed solely to unite its members for better conduct and protection of their mutual business interests; to furnish its members information as to trade conditions; to promote advertising of their products; to exchange information regarding purchase of needed merchandise; to obtain better terms of purchase from manufacturers and dealers; to obtain the advantages to wholesale furniture dealers possible only through concerted action, and that it is not intended that the association engage in business for itself or to buy or sell merchandise, or contract therefor in its own name, or in the name of its members, nor to assume any liability or responsibility for the acts of its members, or to contract liabilities on its own account. Authority was given to obtain headquarters and provide for operation thereof.

The By-laws were thereupon entered into providing for the details of the association's operation and governing its membership. Among the policies of the association therein stated it is provided that the individual members assume no liability or responsibility for the association, or of any other members thereof; that the association, through its members, may act for the members in buying merchandise, but such purchases shall be at the direction of the association and invoiced to the vendee direct, and by him paid; that all commitments for purchases shall be fully performed by the member, and that such purchases through the association shall be for the membership only. There were also provided printed applications for membership, some of which, executed in 1929, were in evidence. Since 1928, each member

was furnished with a membership certificate, signed by the president and secretary.

Plaintiffs' evidence further tended to prove that it is customary for the members to display their certificates of membership in a prominent location in their places of business. Stationery was also adopted containing the name of the association in distinctive lettering, containing on the left margin thereof the names and locations of the dealers who are members of the association, and, also, containing the words "Office of the Secretary, 706-14 Washington Street, Kansas City, Missouri". There was also adopted and used a sign, containing the name of the association, followed by the names of the members, prominently displayed in their places of business, and reproduced in the catalogs issued by the various member organizations. In a conspicuous place on this sign are the words "A Buying Power of $15,000,000."

Plaintiffs' witness Loewen stated that the association was not incorporated because they did not wish the membership to be represented by transferable certificates of stock which could not be canceled if the member was unsatisfactory; also certain individual time and services were required of each member which would be impossible if the association were in corporate form. The name of the association had never been registered. Loewen explained that the way the association works in connection with the furniture trade is that the members meet at the furniture mart in Chicago, Illinois, and Grand Rapids, Michigan, and several other places where, at stated times during the year, large displays are made by the manufacturers of furniture for the inspection of dealers and other purchasers; that the association is divided into committees which give their entire time for the first three days of the display to examining certain lines of furniture, and each evening meetings are held by the members to receive reports from the committees, and after all the reports are in, discussion is had regarding the merchandise, how many of the members would desire to purchase any of the same, and in what quantities. Through the efforts of the combined membership, exclusive patterns are obtainable from the factories, desired changes made without cost to the members, manufacture during off-season can be arranged, and entire outputs can be obtained. These objectives are finally accomplished through the secretary of the association who represents the membership at the factories. Each member is then individually invoiced and pays for what he contracts for. Only in two instances did the association assume any direct responsibility for purchases. Once it bought medicine cabinets from surplus war stock, and redistributed the same to the membership in proportion. On another occasion the association purchased radios directly for $700,000, which were later distributed to the members. Witness said that manufacturers can not afford to make exclusive cuttings of furniture in the quantity desired by the

ordinary individual wholesaler. At the meetings held at the furniture marts each member of the association has a card containing its name and the name and location of the secretary, and, also, the names and locations of all of the members. The committee members present these cards for introduction to the various manufacturers in connection with their negotiations for pattern, price, and quantity of the products. As a general rule all wholesalers attend these furniture marts. There are at least 2000 exhibits on such occasions. Most retail furniture houses have representatives in attendance. The association had headquarters at these marts, but did not register the name of the association because they did not wish their time to be taken up by persons wishing to contact the association, but desired to put the full time of the members in on looking for the type of merchandise needed. No officer of the association receives any salary. The association also maintains extensive correspondence with furniture factories and exchanges suggestions among its members regarding the handling of accounts, the method of payment of salesmen, administration of the Wage and Hour Law, and other such matters of mutual interest. The volume of business done by the members in the current year would be over $2,000,000, although not all purchases are made through the association. The total volume of business thus created by the association for its members during its existence has been $300,000,000. During the past two years when merchandise was exceedingly scarce advertisements were run in a trade publication known as "Retailing". Full page advertisements were run in that publication in about fourteen issues each year. These contained a map showing the territory covered by the activities of the association, the names and locations of the membership, the location of the association headquarters, a statement of the advantages to the manufacturers in dealing through the association, and other similar advertising material. No such advertising was done prior to November 1, 1944. Witness Loewen said that the fact that the defendant was then in business under the same name did not influence the association in starting the advertising and the fact was not considered, as it was believed by Mr. Loewen that defendant would change his name. It was done because of the scarcity of manufactured merchandise. The advertising was paid for by the members through the association.

Mr. Loewen testified that the association had not been listed in the telephone book in Kansas City, Missouri, nor in the city directory because persons who wanted to contact the association knew its location. He said that all members of the association represented good wholesale firms in their territories, some of them of over fifty years' existence; that he now has 75 applications from other dealers wishing to join; that during the war period when the supply was short, the association was able to locate and to obtain large shipments of certain merchandise for its members.

Mr. Loewen stated that he first knew that the defendant was using the identical name as his trade name some time in November, 1944; that he 'phoned the defendant once or twice and finally wrote him on January 25, 1945. In that letter, addressed to the "Associated Furniture Distributors, 2105 Grand Avenue, Kansas City, Missouri, attention Mr. Blackwell", the writer stated that the members of his association had asked him to inquire of the defendant if it was possible for the defendant to change the name of his firm; that the plaintiff association had been in business for 18 years, and that there would be quite a bit of confusion if both had the same name; that naturally the writer wished first to inquire if the defendant would be willing to make the change before the writer answered his association members; that the latter felt that it would be absolutely impossible to continue under the same name, and would do all possible to protect their interests in the matter. To that letter the defendant replied on February 2, 1945, that it would be impossible to make such a change, and that he would be willing to meet and talk the matter over, but naturally would also do everything to protect his interests. On November 8, 1945, counsel for plaintiffs wrote to the defendant, demanding that he take immediate steps to discontinue the use of the name, or modify or change it so that its similarity would be eliminated.

Upon cross-examination, Mr. Loewen stated that his association was an unincorporated, nonprofit association of furniture wholesalers and not listed in Dun & Bradstreet, or any financial publication. He stated that they never had asked for such listing because the individual firms were listed and rated, and that ordinarily no purchases are made by the association, nor paid for by it. He explained that in most cases the bulk order was placed by the Associated Furniture Distributors, but the individual order was made by the individual member and shipped direct to him and paid for by him. He said that he was not interested in contacts with the general public in Kansas City because the association is not a selling organization, but a buying organization, and that all the factories doing business with it knew its office location and how to contact it. He stated, however, that his own company did make purchases through various manufacturing concerns in Kansas City. He said the matter of registering the name of the association under the Fictitious Name Statute of Missouri had never come up, but he had since learned that it had not been registered. He admitted having written on his own firm stationery to the defendant November 2, 1944, addressed to the Associated Furniture Distributors, Kansas City, Missouri, in which he said:

"There is going to be quite a little trouble between the mixup on mail for your firm and the Association of jobbers that I represent. I think it would be most advisable if you will notify all the people you do business with, giving the correct address of

your firm as naturally we do not want to open your mail and pry into your affairs. Our association has been in existence for 18 years and we will work with you of course because of the confusion of names and see that any mail that is sent here is addressed to you. In most cases we can tell and will be very careful about this''.

The letter was signed by the Enterprise Wholesale Furniture and Stove Company, by the witness as president. In answer to that letter the defendant replied November 13. 1944, acknowledging the same, and stating that he did not know that any concern in Kansas City used the name similar to the one he chose when he bought Mr. Calkins's interest in the old concern; that all of his stationery carried his address and he did not see how any trouble could arise through mixup on mail; that he had notified all the carriers, and that his firm name would soon be listed in the telephone and city directories; that he would cooperate in avoiding any confusion in the mail. In connection with Loewen's testimony the credit report on the defendant appearing in Dun & Bradstreet for May 24, 1946, was introduced, showing good credit and a sound financial condition. Plaintiffs offered in evidence the answer filed in this cause by the defendant.

The defendant, in his behalf, stated that he is in the wholesale furniture business, operating under the name of Associated Furniture Distributors, and has so operated since October 1, 1944; that the name has been registered as a fictitious name under the laws of Missouri, but after this suit was instituted; that it has been listed in the city and telephone directories of Kansas City, Missouri, Dun & Bradstreet, and with the Post Office. He related that about one year prior to October, 1944, he entered the furniture business in partnership with one Ross Calkins, and they operated one year as such firm; that about October 1, 1944, he bought out the interest of his partner and thereafter changed the name in all the directories and lists to the ''Associated Furniture Distributors''; that the business had grown rapidly since that time; that he had put in a small amount of money and worked hard, and during the period merchandise was difficult to obtain he had ''beat the bushes'' for merchandise and now has an investment worth $100,000; that he has moved into larger quarters and now has two warehouses. He said he has about fifteen employees. He stated that he has bought his merchandise all over the United States, and attends the markets at Los Angeles, San Francisco, Chicago and all over the country. He said he sold primarily in Western Missouri, all of Kansas, Iowa and Nebraska, and some in various other states. He has also purchased at the Chicago markets and attends the displays there in January and July. When there he registers under the name Associated Furniture Distributors and the name so appears on the published registration for January, 1946, in evidence. He said he did not know of any merchandise having been sold to him on the

misunderstanding that the seller was dealing with the plaintiff association; that everything sold him was on his own standing.

On cross-examination defendant admitted that the plaintiffs' association had received mail intended for the defendant, and that he had received some mail intended for the plaintiff association. He said he had been in the furniture business only a few years; that prior to that time he had never been active in the furniture business as wholesaler or retailer; that after going into business with Mr. Calkins he found the latter not adapted to the business and dissolved the partnership and took over the full ownership October 1, 1944; that he never did visit Mr. Loewen's place of business, but was not certain that his partner, Mr. Calkins, had not done so; that since this suit was brought he had registered the name used by him under the Missouri Fictitious Name Statute. He did not recall any telephone conversations with Mr. Loewen in 1944, but recalled the letter received 30 days after he had started under the new name, suggesting that the plaintiffs would cooperate. He admitted having received the letter of January 25, 1945, advising him that the plaintiffs would do everything necessary to protect their interests in the matter, and also the letter from plaintiffs' counsel, dated November 8, 1945, demanding the discontinuance of the use of the name. He stated that he subscribed to "Retailing" and saw the advertisement of the plaintiffs under the name of Associated Furniture Distributors, Myron A. Loewen, Secretary, all of which he said was some months after he had started business. He said he had maintained correspondence with various factories and others who sold to furniture wholesalers; that his letterheads showed the name "Associated Furniture Distributors, Homer L. Blackwell, Manager"; that he was in fact both owner and manager; that he sent out postcards for the solicitation of merchandise under that name fairly well over the United States; that he endeavored to make such contacts by mail, printed matter, personal letters and personal calls. Prior to his entering the furniture business in 1943, he had been doing advertising work for a radio station; that he knew from his business experience the importance of the name of a commercial organization. When asked why he selected the name "Associated Furniture Distributors", defendant stated that while he was the sole owner of his business and not associated with any one, he had in mind taking many retailers in with him, but because of the scarcity of merchandise it was difficult to buy continually from the same factories to take care of a large organization, but he still entertains that plan.

The plaintiffs' association was and is an unincorporated association and as such had a legal right to adopt a name. Such is a very necessary element of its existence, and its right to the lawful use of its name will be protected. State ex rel. Great American Home Savings Inst., et al., v. Lee, 288 Mo. 679, 705, 233 S. W. 20; 7 C. J. S. p. 37, Sec. 13.

Under formal Articles of Association and By-laws the plaintiffs adopted the name Associated Furniture Distributors in 1928, approximately 16 years prior to its adoption by the defendant. There is no evidence to contradict the evidence of the plaintiffs that they have ever since conducted their affairs and transacted business extensively under that name in the same or very similar trade, and in much of the same territory as that later entered into by defendant in 1944. From the evidence the conclusion is inescapable that during the 16 years of prior operation and continued use of the name by the plaintiffs' association that name has become widely established among the manufacturers and dealers in the furniture trade as identifying the plaintiffs' business and association, and, as far as the evidence discloses, they bear a desirable reputation as such association for performance by their members of commitments made through their association and for the advantages it affords as a dependable outlet for furniture manufacturers. Thus we conclude that defendant's business was competitive with that of the plaintiffs' association in many of its aspects.

It is true the name of plaintiffs' association is composed of generic or descriptive words. Ordinarily such words are not subject to exclusive appropriation in a name. Such words are generally *publici juris,* and may be used by anyone in their primary sense. But when a certain combination of such words as a name, in connection with the business of a particular trader, has by long use come to be understood by the public as identifying the business or products of that trader, such words so used as a name have taken on a secondary sense in which the prior user may have an exclusive right. Furniture Hospital v. Dorfman, 179 Mo. App. 302, 166 S. W. 861. We are not unmindful of the fact that some descriptive words or combinations of them are not capable of such appropriation even in their secondary sense. Illustrations of such were noted by this court in Furniture Hospital v. Dorfman, supra. In that case we held the name "Furniture Hospital" capable of appropriation as a trade name with a secondary meaning, and that the name "New York Furniture Hospital", later used by a nearby shop did not, as a matter of law, so clearly distinguish it from plaintiff's name as to remove the danger of injury to plaintiffs' business. In that case we held that if the description of the business depended upon a figure of speech or an association of ideas, not merely a literal description, such a name is subject to appropriation within the territory of its business. In that connection we quoted with approval the following:

" 'It is unnecessary for the subsequent trader to use such terms in such a manner as to give his goods the same short name, or trade-name, in the market as that of the prior trader's goods, for it is easy to use such terms in some other honestly descriptive way

without injury to any right of either party. Accordingly such a use of descriptive terms is unfair, and will be enjoined' ''.

And we further quoted therein:

" 'A dealer coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rival. Owing to the nature of the goods dealt in, or the common use of terms which are publici juris, some confusion may be inevitable. But anything done which unnecessarily increases this confusion and damage to the established trader constitutes unfair competition. The unnecessary imitation or adoption of a confusing name, label, or dress of goods constitutes unfair competition. Where there is no reason for using a particular name other than to trade upon another's good will, such use of the name constitutes unfair competition, and will be enjoined' ''.

And we further said:

"And when this is the case, the former name is not unqualifiedly publici juris merely because it may be descriptive of the business, but is susceptible of being a nonexclusive trade-name with a secondary meaning; that is, a meaning that carries with it the signification that it is the business of a particular owner".

From the evidence it is our opinion that the name of plaintiffs' association, although composed of generic and descriptive words, has, by its long and extensive use in the trade by the plaintiffs, assumed a secondary meaning in that it identifies the plaintiff association with the furniture trade in the territory or at least in part of the same territory in which both plaintiffs and defendant are engaged in such trade, and that the adoption of the identical name by the defendant in the same territory and in the same or similar trade is an invasion of plaintiffs' prior and exclusive rights thereto.

The defendant urges the point that the plaintiffs come into equity with unclean hands because they have failed to register their association name under Article 3, Chapter 140, R. S. Mo., 1939. No bad faith or fraud having been shown on plaintiffs' part by the use of their association name, and no violation of law in the nature of its contracts or transactions, we believe this defense is not available to the defendant. Ditzell, et al., v. Shoecraft, 219 Mo. App. 436, 274 S. W. 880.

Defendant further contends that plaintiffs are not entitled to relief because they are guilty of laches in failing to notify defendant promptly to discontinue the use of the name. It is true that the letter from the plaintiffs to the defendant dated November 2, 1944, although complaining of the use of the same name by defendant, indicated nonresistance to such use, and promised cooperation in prevention of confusion of mail, suggesting that defendant notify those with whom

he did business of his correct address, and it is true that not until over two months thereafter did the plaintiffs specifically request defendant to discontinue the use of the name and intimate litigation, and on the following November 8, through their counsel, demanded immediate discontinuance of the name by the defendant and threatened a lawsuit, during all of which time the defendant built up his business and trade under the name complained of, yet he is in no position to claim laches for the reason that he himself, in his cross-petition, filed June 13, 1946, complained of the use of the name by the plaintiffs, of which he was admittedly aware on November 2, 1944. As to the effect of the use of the name by both plaintiffs and defendant, the defendant in his said cross-petition admits that "the continued use of said name by those of the plaintiffs who are engaged in the furniture business will continue to cause said confusion to the public detriment, and to the detriment of defendant's business, which will be irreparably damaged, and for which there is no adequate or complete remedy at law". He further alleges that the use of the name by the plaintiffs had embarrassed the defendant and "confused, deceived and misled the public and in particular the furniture trade, inducing in all of their minds the belief that the so-called Associated Furniture Distributors, of which the plaintiffs claimed to be members, is identical with defendant's business". On the witness stand the defendant further admitted that he had received mail intended for the plaintiffs and that the plaintiffs had received mail intended for him. The evidence does not show any demand by the defendant that the plaintiffs cease the use of the name. If laches existed, it was mutual. "Where each of the parties seek affirmative relief against the other in reference to the same transaction, neither may assert that the other was guilty of laches". 21 C. J. p. 216, Sec. 215.

Finally, the defendant contends that plaintiffs are not entitled to relief because there was no fraudulent intent shown on the part of the defendant. It is true that defendant testified that prior to 1943, he had never been in the furniture business; that although he thereafter was in the business with his partner Mr. Calkins, he had never visited the office of Mr. Loewen, the headquarters of the plaintiffs' association in the same city, although Mr. Calkins may have done so. He further testified that although he was sole owner of his business he chose the name Associated Furniture Distributors with the idea of later associating himself with many other dealers. Thus he not only selected and adopted the identical name then in use and which had been used for the previous 16 years by the plaintiffs, but apparently contemplated an organization of a character similar, if not the same, as that of the plaintiffs' association. The fact that the plaintiffs had not listed their association name in the city or telephone directories of Kansas City, nor appeared in financial lists or ratings would not have deprived plaintiffs of their prior right to the use of their associa-

tion name, considering the substantial evidence of its activities in the trade throughout the territory in question. This cause being only to prevent further infringement of the right to use the trade name, and no damages or accounting being sought, and the evidence clearly indicating probable confusion among the trade between the business of plaintiffs and defendant, some such conflict having already occurred, the proof of fraud or actual evil intent is not essential to plaintiffs' case, the same being presumed. Am. Jur. Vol. 52, p. 569, Secs. 88 and 151; 63 C. J. p. 403, Sec. 105; Muffet v. Smelansky, 158 S. W. 2d 168.

Under the evidence we are constrained to hold that the plaintiffs were entitled to the injunction as prayed, and the decree of the trial court should be set aside and reversed so far as it dismissed the plaintiffs' petition. It is so ordered, and the cause is reversed with instructions to enter a decree for plaintiffs on their petition, enjoining defendant from using and carrying on his furniture business under the name Associated Furniture Distributors, or any other name in imitation thereof, and that plaintiffs have and recover their costs herein expended. All concur.