260 S.W.2d 782 (1953)
SHROUT
v.
TINES.
No. 28572.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
*783 R. P. Smith, Cape Girardeau, for appellant.
J. Grant Frye, Cape Girardeau, for respondent.
ARONSON, Special Judge.
Plaintiff, who has been engaged in business as "Cape Coal Company," brought suit to enjoin defendant from using the name "Cape Fuel Company" on the ground that defendant's action constituted unfair competition; and plaintiff was granted an injunction in the Circuit Court, from which decree defendant has appealed. The parties will be referred to herein as plaintiff and defendant, rather than as respondent and appellant.
In his petition for injunction plaintiff alleged that for 21 years prior to 1945, Ed Pott and others operated a coal and fuel business at 44 S. Frederick Street in Cape Girardeau as Cape Coal Company and the name became widely and favorably known; that on April 20, 1945, plaintiff purchased the business and said name and has since continued to use the name in said business at the same location and has publicized the name; that defendant who previously sold kindling and coal as "Tines Coal and Wood Company" caused his business to be listed in the telephone directory issued January 15, 1952, as "Cape Fuel Company," and since then former customers of plaintiff, through confusion and in the belief they were dealing with plaintiff have ordered *784 coal from defendant; and that many such errors will continue in the future unless defendant be enjoined from using the name. It was further alleged that defendant's acts were for the purpose of taking plaintiff's business through confusion and unfair competition; that plaintiff is damaged and has no adequate remedy at law.
Defendant's answer alleged that plaintiff and his predecessors had violated Section 417.200 to 417.230 RSMo 1949, V.A. M.S., by their use of the name "Cape Coal Company" and that defendant has complied with said sections by registering the name Cape Fuel Co. when he changed the name of his business. He further alleged that many businesses in Cape Girardeau use names beginning with the word "Cape," and same are listed in the telephone directory. He denied allegations of the petition and charged plaintiff with unclean hands and bad faith.
The evidence of plaintiff himself showed that in 1945 plaintiff bought a retail coal business at 44 S. Frederick Street in Cape Girardeau, Missouri, which the former owners had operated there since 1924 under the name Cape Coal Company. He continued to sell coal for commercial and domestic purposes at the same location and under the same name from the date of his purchase until the time of trial. Principally he sold "Ziegler" coal, for which he had the exclusive franchise in his area. It is a well advertised coal. In 1951 he sold a total of about 16,000 tons which he believes makes his the largest retail coal business in Southeast Missouri. He keeps a stock pile of 200 to 1600 tons in his yard. All is delivered to him by rail. He has regular customers, some of whom have bought from "Cape Coal" for over twenty years. He knows a great number of people, belongs to the Chamber of Commerce and many other organizations. He advertises his business on radios in Southeast Missouri, in daily papers, by a neon electric sign which cost $900, on stationery, blotters, match-books and in other ways, spending $1,100 per year for advertising and using in all these media the name "Cape Coal Company."
On cross-examination, plaintiff testified that he had never registered the trade name "Cape Coal Company" with the Secretary of State of Missouri under the "fictitious name" statute, and if his predecessors had done so he knew nothing about it.
Defendant testified that he was in the coal, wood and kindling business at 120 S. Frederick St. (about one-half block from plaintiff's place on the same side of the street and that he had been in the wood business in Cape Girardeau about thirty-five years. He had moved to his present location 12 to 15 years ago, using the name Tines Coal Co. During World War II he bought out the Atwood Coal Co. and then changed his business name to "Atwood & Tines Coal Co." On December 22, 1949, he applied for registration of the fictitious name "Cape Fuel Company," and there was introduced in evidence the Secretary of State's receipt for his $2 fee, dated December 30, 1949. However, the name "Cape Fuel Company" did not appear in the local telephone directory until January 1952. (Defendant said he was a day late when he applied in 1950 to have his new business name listed in the 1951 book.) Tines Coal & Wood Company is also listed at the same address and telephone number.
Defendant and his wife both declined to estimate, or in any way to answer questions as to, the volume of defendant's business. He belongs to no organizations and does not advertise. Half his business is coal and half is wood and kindling. He had in mind to handle fuel oil, but never had done so. Shown a picture of his very small office or "shack" he described it as "setting between the junk yard and a sink hole." He brings his coal in by truck and stock piles very little.
Defendant was acquainted with plaintiff and his business and with the prior owners of "Cape Coal Company."
Mrs. Ruby Tines, defendant's wife, testified that although the name "Cape Fuel Co." first appeared in the January 1952 telephone book, they began using it in November *785 1951, when they had a sign put up bearing that name. The name was taken because Mr. Tines thought they might sell the business and it might sell better under that name.
"Cape" is a common abbreviation of the name of Cape Girardeau. In the unclassified portion of the 1952 telephone directory there are 24 businesses listed which bear the name "Cape," half of which are between Cape Coal and Cape Fuel. In the classified section, Cape Coal Company is immediately followed by Cape Fuel Company, under the caption, "Coal, Retail."
Early telephone directories showed that in October 1948 defendant was listed as Tines Coal & Wood Co. and as Atwood Coal & Wood Co. and had a display "ad" as Atwood & Tines Coal Co. (to which further reference will be made in the next succeeding paragraph.) In January, 1950, and January, 1951, defendant appeared only as Tines Coal & Wood Co. in the classified section and also as Atwood Coal & Wood Co. in the general listings. In the January, 1952, book, the Tines Coal & Wood listing still appears in the alphabetical section, but only Cape Fuel Co. for defendant in the classified section. Plaintiff consistently appeared in all books as Cape Coal Co., with a display advertisement. The R. L. Polk & Co. City Directory of Cape Girardeau for 1951 showed Cape Coal Co. (Elmer E. Shrout) and Tines Coal Co. (Gilbert M. Tines.)
There also was evidence that defendant caused to be inserted in the classified section of the October 1948, telephone directory, when defendant was doing business as Atwood & Tines Coal Company, an advertisement for "Geewhiz" coal, which was remarkably similar to an advertisement for "Ziegler" coal which plaintiff had used customarily. Defendant had a special "cut" made by a printer. The Ziegler cut was in the form of an ellipse, with the letters in the middle of the word larger than the first and last letters, and all seemed to be cut out, for prominence. Across the large word "Ziegler" were small words "much hotter and cleaner." Defendant's cut of "Geewhiz" was patently patterned after the Ziegler cut, having the same number of letters, in the same shapes, and with the identical legend across the center, "much hotter and cleaner." Plaintiff protested to defendant about this, and the advertisement did not appear again.
Plaintiff first learned of defendant's use of a new name "Cape Fuel Company" when the January, 1952, telephone book appeared. He protested to defendant to no avail and filed this suit on February 5, 1952. He had previously accommodated defendant by allowing him to use Cape Coal Company scales and by letting defendant buy coal from him, if defendant had none.
Plaintiff's witness, Mrs. Tarr, testified that she made a telephone call to order coal from the company they had long done business with, Cape Coal Company, and not until the coal was delivered that she discover that Cape Fuel Co. was making delivery. She had looked in the white or unclassified part of the telephone book, found Cape Fuel Company and did not realize it was a concern other than what she intended to call. She permitted defendant to complete his delivery.
Sidney Ross, a merchant, who had given plaintiff all his coal business for some years, testified that he told his office girl to call Cape Coal Company and by mistake she called Cape Fuel Company. He discovered the error when plaintiff passed by and he complained to plaintiff that only one ton had been delivered, though he ordered two. Plaintiff replied it was not his coal but his competitor's. He cancelled the second ton, because he always used Ziegler coal.
Charles H. Wood, Jr., testified that he is a St. Louis coal salesman. He made a long distance call to plaintiff at Cape Coal Company. The operator in Cape Girardeau asked if he meant Cape Coal Co. or Cape Fuel Co. He repeated Cape Coal Co. and the call went through.
There was testimony also of some letters intended for defendant being delivered to Cape Coal Company (plaintiff).
*786 Defendant presented several persons as witnesses who testified that they had not been confused by the similarity of names.
The Circuit Judge found the issues in favor of plaintiff and granted a permanent injunction, whereby defendant was "enjoined from operating his business under the name of `Cape Fuel Company' and from carrying on any publicity or advertising under such name and from listing it in the telephone directory of the City of Cape Girardeau, Missouri."
As an appeal in equity, this case must be considered de novo allowing due deference to the trial court's conclusion on the facts. Yet the principal issues here are matters of law, rather than of fact.
The first points to be considered are defendant's contentions that plaintiff cannot succeed in this action because he has never registered his business style "Cape Coal Company" as a "fictitious name," as required by statute, and that, therefore, he does not enter the court of equity with clean hands and is in the position of asking the protection of a court of equity in his violation of a statute, which makes nonregistration a misdemeanor, Sections 417.210 and 417.230 RSMo 1949, V.A.M.S.
A plaintiff will be barred from relief under the familiar maxim "He who comes into equity must come with clean hands" only when he has been guilty of unlawful or inequitable conduct "in the matter with relation to which he seeks relief." 30 C.J.S., Equity, § 93, p. 476. The failure of plaintiff and of his predecessors in the Cape Coal Co. enterprise to register their trade name had nothing to do with, nor was it causative of, the alleged unfair competition charged against defendant.
Our Supreme Court has held in Bassen v. Monckton, 308 Mo. 641, 274 S.W. 404, loc. cit. 407, that "the statute does not prohibit them from adopting a fictitious name and trading under it. The statute requires only that they register the fictitious name if they use one." To the same effect is Kusnetzky v. Security Insurance Co., 313 Mo. 143, 281 S.W. 47, 45 A.L.R. 189.
Following the report of the last mentioned case in 45 A.L.R. is a lengthy annotation on fictitious name statutes, page 198. Relative to suits for infringement of trade names, the following is taken from said annotation, pages 234-235:
"In Devlin v. Peek, C.C.1904, 135 F. 167, affirmed without opinion in 2 Cir., 1906, 144 F. 1021, 73 C.C.A. 619, it was held that the provision of the New York statute forbidding one to conduct or carry on business in that state under an assumed name, or any designation other than the real name of the individual carrying on the business, unless a certificate was filed in conformity with the statute, did not forbid the institution of an action by an individual who had assumed a tradename for infringement thereof.
"So, the provision of the New York statute prohibiting persons from transacting business in the name of a partner not interested in the firm, and providing that, when the designation `and Company' or `& Co.' is used, it shall represent an actual partner, was said in Wallach Bros. v. Wallack, 1922, 200 App.Div. 169, 192 N.Y.S. 723, not to have been passed to aid a competitor, but partly for the benefit of creditors and partly for the benefit of a partner whose name is being used without his consent, so that illegal use by the defendant of a partnership name, under the statute, was held not available to the plaintiff in an action to restrain the use of a similar tradename.
"And it was held in Potter v. Osgood, 1922, 79 Pa.Super. 397, that failure of one doing business under a fictitious tradename for several years to register the name as required by statute, until after another party had assumed and registered it, did not preclude the former form maintaining a suit brought after he had registered the name, to enjoin the latter from continued use thereof. The court said that the failure of the plaintiff, through ignorance or oversight, to register as required by the statute, afforded *787 no justification to the defendant to appropriate his property or interfere with his business."
The case of Bagby v. Blackwell, 240 Mo. App. 574, 586, 211 S.W.2d 69, 76, not mentioned in the briefs herein, seems fully to dispose of the contention of defendant. At page 76 of 211 S.W.2d of his opinion, Judge Dew said:
"The defendant urges the point that the plaintiffs come into equity with unclean hands because they have failed to register their association name under Article 3, Chapter 140, R.S.Mo.1939, Mo.R.S.A. [Section 417.010 et seq. RSMo 1949, V.A.M.S.] No bad faith or fraud having been shown on plaintiffs' part by the use of their association name, and no violation of law in the nature of its contracts or transactions, we believe this defense is not available to the defendant. Ditzell v. Shoecraft, 219 Mo.App. 436, 274 S.W. 880."
This holding has been fairly construed by the writer of the syllabus to mean that "Under the fictitious name statute, an unincorporated association failing to register its name does not forfeit its right in equity to enjoin unfair trade use of its name by another in absence of evidence of bad faith or fraud on plaintiff's part or violation of law in the nature of its contracts or transactions. Mo.R.S.A. § 15466 et seq."
Under the foregoing authorities defendant's argument is without merit. No fraud or bad faith on the part of plaintiff has been shown; no violation of law in his contracts or transactions has been demonstrated; and he is not barred from bringing this suit under the "clean hands" maxim. The cases relied on by defendant are all clearly distinguishable, each being an instance of misconduct by plaintiff in connection with the very action of defendant about which plaintiff made complaint.
We turn next to a consideration of another point made by defendant, who asserts that "the use of geographical words will not be enjoined in the absence of fraud or misleading of the public." We think defendant undertakes to state the rule too broadly, in his total disregard of the factor that geographical words, as other words, can acquire a so-called "secondary meaning."
Defendant relies on two cases. The first is National Bank in North Kansas City v. Bank of North Kansas City, 238 Mo.App. 19, loc. cit. 29, 172 S.W.2d 967, loc. cit. 971, wherein injunction against the use of defendant's corporate name was denied. The case is unusual in that generally there is less variety in the selection of names for banks than there is in other lines of business. The Kansas City Court of Appeals correctly held that the word "National" made a very great difference in the names of the two banks. Because of this word, there was no occasion to apply the rule, which Judge Cave recognized that: "if the corporate names are identical or so similar that persons using due care and caution, such as the public generally are capable of using, would likely be deceived and misled by the similarity, then equity should grant relief to the corporation having prior legal claim to a particular corporate name."
The court expressly disclaimed holding that the use of generic or geographical names may never be enjoined.
The other case cited by defendant is A. J. Reach Co. v. Simmons Hardware Co., 155 Mo.App. 412, 135 S.W. 503, 504, decided by this court in 1911. This case involved the right to use the words "Official American League" baseball. The defendant had begun to use the words "American" and "League" in 1892, whereas the "American League" as a major association of baseball clubs was not organized until 1900. The case stands for the proposition that the word "American" being geographical is not capable of exclusive appropriation as a trade name. The same is said for the words "league" and "official" as generic words. Yet the doctrine of secondary meaning is recognized. Ultimately the case seemed to turn more on the word *788 "official" than any other, and it was remanded for possible further evidence. It is less helpful than other more modern authorities, to be mentioned, infra.
Those who have the occasion and inclination to explore the subject will find a very complete annotation entitled "Doctrine of secondary meaning in the law of trademarks and of unfair competition," at 150 A.L.R. 1067. In brief, this doctrine is that words used in connection with a business which are not capable of exclusive appropriation "may nevertheless be protected against simulation when they have acquired a secondary meaning, differing from their primary meaning, that is, when they have become associated in the mind of the public as identifying the source or origin of goods, rather than the goods themselves." 150 A.L.R. loc. cit. 1071-1073.
Such factors as actual user of a trade name, length of time, advertising and sales volume go into the creation or development of a secondary meaning.
Words that are ordinarily or primarily generic or descriptive can acquire a secondary meaning when used as part of a firm or corporation name 150 A.L.R. loc. cit. 1100. This includes geographical names.
"Though incapable of being appropriated as a technical trademark, a merely geographical term, that is, a term signifying in its primary sense that `the goods or their constituent materials were produced or processed in the place designated by the name or that they are of the same distinctive kind or quality as the goods produced, processed, or used in that place,' or that `the person so using the name is the owner, or acts with the consent of the owner, of the place or of the sole source of supply indicated by the name,' may, nevertheless, be the subject of protection against simulation when the term has acquired a secondary meaning." 150 A.L.R. loc. cit. 1104.
Nims on Unfair Competition and Trade-Marks, 4th Edition, in Sec. 101 covers the acquisition of a secondary meaning in the use of a geographical name. From Sec. 115, page 327, we quote:
"The nicknames of places, and words which are not the names of places at all, though they describe location, are governed by the same rules as geographical names. `Continental;' `International;' `Sea;' `Quaker State;' have been held to be geographical names. `Keystone,' `Granite State,' `Empire State,' `Hoosier,' which are nicknames of states and thus semi-geographical in meaning by usage, may acquire a secondary meaning, as connected with a particular make of goods, and when so used will be protected against use in a similar sense by rivals."
See also Derenberg on Trade-Mark Protection and Unfair Trading, Sec. 338, "Application of Doctrine of Secondary Meaning to Geographical Names."
The theory of plaintiff's petition is that defendant's use of the name Cape Fuel Co. is unfair competition. Said Mr. Justice Collins in Bard-Parker Co., Inc., v. Crescent Mfg. Co., 174 Misc. 356, 20 N.Y.S.2d 759, loc. cit. 762, 763:
"Unfair competition is a species of commercial hitch-hiking which the law finds offensive, and, therefore, prohibits. The law of unfair competition is but a reaffirmation of the rule of fair play. It aims to effect honesty among competitors by outlawing all attempts to trade on another's reputation it gives the crop to the sower and not to the trespasser. In so doing it strives to protect the buying public from deception. American Chain Co., Inc., v. Carr Chain Works, Inc., 141 Misc. 303, 306, 307, 252 N.Y.S. 860; Bengue v. American Pharmaceutical Co., Inc., 155 Misc. 602, 607, 280 N.Y.S. 153."
A trade name is a most important part of the good-will of a business. Plaintiff's business conducted under one trade name *789 since 1924, has a valuable good-will which must have been reflected in the price of his purchase in 1945. The recent cases protect the prior user of a trade name from the harmful effects that certainly flow from the assumption by another of a name so similar as to be likely to create confusion in the minds of prospective customers.
In Bagby v. Blackwell, supra, the court protected the prior use of the name "Associated Furniture Distributors". The word "Associated" basically is a generic word, as are the other words in the tradename in controversy. "But when a certain combination of such words as a name, in connection with the business of a particular trader, has by long use come to be understood by the public as identifying the business or products of that trader, such words so used as a name have taken on a secondary sense in which the prior user may have an exclusive right. Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 863." 211 S.W.2d loc. cit. 75. There was further extended quotation from the last cited case, which is worthy of attention here. The opinion holds that the use of plaintiff's trade-name for 16 years, although composed of generic words, had given it a secondary meaning, and the appellate court directed that an injunction be granted.
In Thomas Patrick, Inc., v. KWK Investment Co., 357 Mo. 100, 206 S.W.2d 359, our Supreme Court ruled that in an unfair competition case involving use of a trade name it was not necessary that some one have been actually deceived or that plaintiff have sustained actual loss of business; and, further, that it was no longer necessary that the parties be engaged in competitive businesses.
In Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286, even the use of defendant's family name was enjoined. See also, Cook Chemical Co. v. Cook Paint & Varnish Co., 8 Cir., 185 F.2d 365.
In Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74, the use of the word "Seventeen" was protected for the benefit of a magazine publisher.
Plaintiff and defendant are engaged in competing businesses, on the same street, one-half block distant. The names Cape Coal Co. and Cape Fuel Co. appear consecutively in the telephone book, classified section. By chance, the former is at the bottom of one page, the latter at the top of the next. Even without this happenstance, there can be no doubt that the similarity of names is such as to cause confusion and misunderstanding. Witnesses so testified and errors were inevitable in the circumstances.
In Mary Muffet, Inc., v. Smelansky, Mo. App., 158 S.W.2d 168, this court held that the use of the name "Mary Mason" was so similar to plaintiff's trade name "Mary Muffet," as to constitute unfair competition. See also Empire Trust Co. v. Empire Finance Corp., 226 Mo.App. 298, 41 S.W.2d 847.
We hold that it was unfair competition on the part of defendant to adopt the name Cape Fuel Company, and that the trial court very properly enjoined his further use of the name. With almost unlimited freedom of choice in the selection of a trade name, defendant chose to attempt to use a name almost identical with that of plaintiff. "Cape Coal Company" as a trade name identifying plaintiff's business had acquired a secondary meaning, after 28 years, which made it more than a geographical name. Plaintiff was entitled to protection in the use of that name, because of his long previous use; the right lies with prior use, not with priority in paying a $2 registration fee to the Secretary of State.
All the requirements set forth in the controlling cases are supplied here. It is clear to us that the similarity of the names Cape Coal Co. and Cape Fuel Co. is so great that confusion must necessarily arise between the two. Persons of ordinary care could be expected to mistake one for the other. The evidence showed that this actually happened.
If it were necessary to determine whether there was an intent to deceive on the part of defendant, in the adoption by him *790 of the name Cape Fuel Co., we should have to say that there is some very persuasive evidence to that effect in the record in this case. On a prior occasion, defendant had an advertising "cut" prepared which is a patent imitation of plaintiff's cut advertising Ziegler coal, but discarded same after plaintiff protested. In addition, defendant's long delay from December 1949, to November 1951, in making use of the name Cape Fuel Co. after registering same with the Secretary of State is an apparent concealment of his change of name, until what he perhaps regarded as a propitious time for its disclosure, a suspicious circumstance.
What we have already said disposes of defendant's remaining point, that an injunction should never be granted unless substantial damage is being suffered or imminently threatened. There has been confusion and plaintiff has lost some business thereby. There is sure to be more loss in the future if defendant's unfair competition is not prevented.
The decree of the Circuit Court, granting a permanent injunction, is affirmed.
ANDERSON and RUDDY, JJ., concur.