BETTER BUSINESS BUREAU OF KANSAS CITY ADVERTISING CLUB, Inc., Respondent,

v.

D. J. CHAPPELL and Greater Kansas City Service, Inc., Appellants, Southwestern Bell Telephone Co., a corporation, Respondent.

No. 22606.

Kansas City Court of Appeals. Missouri.

Dec. 2, 1957.

J. K. Owens, Martin Anderson, Kansas City, for appellants.

Robert M. Murray, Kansas City, for respondents.

HUNTER, Judge.

This is an appeal from an injunction decree issued by the circuit court of Jackson County in favor of respondent, the Better Business Bureau of the Kansas City Advertising Club, against appellants, D. J. Chappell, Greater Kansas City Service, Inc., and Southwestern Bell Telephone Company, among other things, restraining the first two named appellants from using the words "Better Business" or any name similar to or in imitation thereof, as a part of their corporate or trade name, and restraining respondent, Telephone Company, from furnishing them service under the listing "Better Business Association of Greater Kansas City".

Respondent was originally incorporated in Missouri on March 27, 1917, by pro forma decree as a Benevolent, etc., corporation under the name "Advertisers' Protective Bureau of the Kansas City Advertising Club". In 1922, by certificate of the Secretary of State of Missouri, its name was changed to "Better Business Bureau of the Kansas City Advertising Club". Its purposes were to promote integrity and create confidence in advertising, selling and all other phases of business. It has no capital structure and exists wholly upon voluntary subscriptions and contributions from business firms and individuals. It has hundreds of subscribers to its services, consisting principally of merchants, manufacturers, wholesale and retail brokers and dealers of the Greater Kansas City area (Kansas City, Missouri, and its adjacent metropolitan area) who contribute annually to it in sums ranging from about $25 to $500. It operates its business by officers,

elected by a board of nine directors, who are some of the leading business men of the area. Respondent's service consists generally in investigating complaints made by members of the general public, including but not limited to its subscribers, of alleged false and fraudulent sales representations and practices, unlawful stock sales and promotions, false and fraudulent solicitations of funds and contributions, and other similar transactions, all of which it endeavors to correct or to cause to be stopped. It publishes and furnishes free to its subscribers and to other members of the public a weekly publication, "Better Business Bureau Bulletin" through which its readers are kept advised of many of respondent's activities, and of false and fraudulent schemes, sales promotions and services going on in the area.

Ever since 1917, respondent has conducted its business in the Greater Kansas City area, and for many years has had its office at 1025 Grand Avenue, Kansas City, Missouri. Ever since 1922, respondent has conducted and operated its business and services under the name "Better Business Bureau". Since that date its business has been advertised in the telephone directories, and city directories of Kansas City, Missouri, Kansas City, Kansas, and throughout the Greater Kansas City trade territory and in numerous other ways as "Better Business Bureau". It is known as the company in the area which is engaged in furnishing the previously discussed services to the public. Thousands of people in the Greater Kansas City area each year for many years have received its services, and it has acquired a fine reputation for its high business integrity and public service. The general public of the Greater Kansas City area has come to know and speak of respondent as the "Better Business Bureau", and do business with it, subscribe to its services and contribute to it in that name. All through the years since its date of incorporation there never has been any other entity engaged in the same or a similar business in the Greater Kansas City

trade area using the words "Better Business" as a part of its actual or trade name.

On December 6, 1955, appellant, D. J. Chappell, organized a Missouri for profit corporation, its name being "Greater Kansas City Service, Inc.", with its place of business located at 3520 Main Street, Kansas City, Missouri. The stated purposes for which the corporation was formed were checking of credit, furnishing financial credit reports, investigating and handling complaints of false and fraudulent advertising, sales, schemes to defraud the public, fraudulent stock promotions and sales, and similar transactions. It contracted with appellant, Telephone Company, for telephone listings and service under the name "Better Business Association of Greater Kansas City, 3520 Main Street," and had that listing placed in the telephone directory used and distributed throughout the Greater Kansas City area. Its position there was just ahead of the listing of respondent which was listed therein as "Better Business Bureau".

It immediately sent out some 7,000 post cards to business men and firms of the area, many of whom were long-time subscribers to respondent's services. These post cards contained in large capital letters the phrase "due now"—"Your 1956 subscription to the Better Business Association of Greater Kansas City Service, Phone LO 1–9496, 3520 Main Street, Kansas City 11, Missouri. 95 per cent of the merchants will mail in $25.00 to $500.00 according to the business. You do the same. Note: This is deductible from your income tax, so actually it costs you nothing. Please mail your check today. Thank you." As a result of sending out these post cards a large number of respondent's subscribers were caused to believe that they were receiving their 1956 bill from respondent. None of them realized the post card did not refer to the "Better Business Bureau" they had come to know as being respondent, but rather referred to a new corporation with whom they had never dealt. Some testified that the "due now" part of the message on the post card

particularly misled them, as the only such entity they could possibly owe anything to was respondent. They also testified that the similarity of names likewise misled them into believing the card came from respondent. As a result of receiving these post cards many of respondent's subscribers sent checks or money orders to appellant, Greater Kansas City Service, Inc., thinking it was the "Better Business Bureau" (respondent) with whom they had been doing business over the years. Even the plaques it gave to its subscribers resembled in general shape and color those that respondent customarily gave to its subscribers. Also, it was offering to its subscribers a bulletin, somewhat similar to one which respondent regularly provided its subscribers.

Appellant, Greater Kansas City Service, Inc., using the name "Better Business Association of Greater Kansas City" also commenced a vigorous telephone solicitation campaign designed to get it customers. These telephone calls were so worded as again to cause many of those called to mistakenly believe they were being contacted by respondent, "Better Business Bureau", and were being requested by it to subscribe to its service or to renew its existing service arrangement by sending in a renewal check or money order. A similar campaign, lesser only in degree, was undertaken by it through personal calls by its employees. At its place of business on Main Street it placed on the door its assumed name "Better Business Association of Greater Kansas City—Service—" in a prominent position. Although at least some of the people who were contacted by it indicated they thought they were dealing with respondent "Better Business Bureau", appellants, Greater Kansas City Service, Inc., and Chappell, did nothing to correct that misconception.

The substance of the testimony on behalf of appellants, Chappell and Greater Kansas City Service, Inc., was that the community could support and needed at least

two companies rendering this type of service to the public; that they did not intend to confuse or deceive the public, nor to pirate respondent's business, and that if the public and persons contacted had exercised ordinary caution they could not have been deceived but would have known it was these appellants' services that were being offered or mentioned. Further, the corporation operated both under the fictitious name "Better Business Association of Greater Kansas City" and also under its charter name, and that it put both names on its door, on plaques it gave to its customers, and on its receipts it gave to people for their money. However, the exhibits in evidence disclose it used only a portion of its corporate name, and the arrangement as to size and position was such as to be misleading to the ordinary observer. It did register its fictitious name with the state after its incorporation, whereas respondent had never registered its fictitious name. The evidence also indicated that appellant, Chappell, had done business with respondent in prior years when he had been in various enterprises, and had not liked it when customers of some of those enterprises had made complaints to respondent who, in turn, had advised him of those complaints. Chappell acknowledged that for many years prior to 1956 he was familiar with respondent's services and its business structure.

Claiming that its trade name "Better Business Bureau" had taken on a secondary meaning to members of the public of the area, and that appellants, Chappell and the corporation he formed and controlled, were through unfair competition and misrepresentation pirating respondent's trade name and its business, and misleading and deceiving the public, respondent sought and secured an injunction against such practices and use of the words "Better Business" by these two appellants, and to prevent the mentioned listing with appellant, Telephone Company, who felt it must carry such listing on request, if not enjoined therefrom.

From that injunction order this appeal was taken.

On this appeal, appellants, Chappell and Greater Kansas City Service., Inc., while conceding that respondent has an exclusive right to the words of its full corporate name, assert it does not have the (exclusive) right to the use of the words "Better Business" in connection with its business, since those words are essentially generic or descriptive and are only a part of the corporate name. Hence they say the judgment of the trial court is against the law and the evidence.

Since this is an appeal of an equity case, we must review it de novo, making our own independent findings of the facts and reaching our own conclusions as to the law. In so doing, we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Peine v. Sater, Mo.Sup., 289 S.W.2d 101; Nixon v. Franklin, Mo.Sup., 289 S.W.2d 82.

Respondent's suit is brought on the principle that one has the right to enjoin the unfair competition of a competitor endeavoring to pirate its business. Respondent does not claim that its long-time use of the words "Better Business Bureau" causes them to be a technical trade-mark. See 150 A.L.R. 1069. Rather its contention is that it is entitled to protection against their simulation and unfair and misleading use inasmuch as these words have acquired a secondary meaning.

As stated in Shrout v. Tines, Mo.App., 260 S.W.2d 782, 788: "Unfair competition is a species of commercial hitchhiking which the law finds offensive, and, therefore, prohibits. The law of unfair competition is but a reaffirmation of the rules of fair play. It aims to effect honesty among competitors by outlawing all attempts to trade on another's reputation—it gives the crop to the sower and not to the trespasser. In so doing it strives to protect the buying public from deception."

The law is well settled that words or names which are generic or descriptive, and thus probably not capable of exclusive appropriation as a technical trade-mark may nevertheless by long use in connection with the goods, services or business of a particular person or entity come to be understood by the public as designating the goods, services or business of that particular person or entity, and thus acquire a secondary meaning in the public mind which may be protected against unfair competition. Furniture Hospital v. Dorfman, 179 Mo. App. 302, 166 S.W. 861; Mary Muffet, Inc. v. Smelansky, Mo.App., 158 S.W.2d 168; 87 C.J.S. Trade-Marks, etc., § 90. Such generic or descriptive words can acquire this secondary meaning when used as a trade-mark for a particular firm or corporation. Shrout v. Tines, supra, 260 S.W.2d loc. cit. 788. To constitute unfair competition in respect to a trade name two elements must be present. The name must have acquired the mentioned secondary meaning or significance that identifies the plaintiff, and the defendant must have unfairly used the name or a simulation of it to the prejudice of plaintiff's interests. Annotation, 150 A.L.R. 1067, 1076. As this court said in Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286, 290: "* * * property rights in a trade-name will be recognized perhaps even more readily when, as here, it embodies the distinctive part of the owner's corporate name. And this is particularly true where resemblance is so close as to be likely to produce confusion as to such identity."

It is also settled law that a person, firm or corporation coming into a field already occupied by another of established reputation must do nothing which will unnecessarily create or cause confusion between his goods, services or business and the goods, services or business of the former. Anything which unnecessarily creates or increases this confusion and damage to the established person or entity may constitute unfair competition. Thus, the unnecessary imitation, adoption or simulation of a name and its use in a manner that causes or is likely to cause confusion because of its sameness or similarity to the name of another previously established in the same type of business, and which results or is likely to result in the passing off of the goods, services or business of the one for that of the other will ordinarily be considered as constituting actionable unfair competition. Bagby v. Blackwell, 240 Mo. App. 574, 211 S.W.2d 69, 76; Mary Muffet, Inc., v. Smelansky, supra.

It is expressed thusly by our supreme court in Thomas Patrick, Inc., v. KWK Inv. Co. 357 Mo. 100, 206 S.W.2d 359, 360: "It should be noted that it is not a necessary prerequisite to relief in cases of this nature that some one, in point of fact, has been deceived (Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 53, 60, 15 S.W. 843, 844, 24 Am.St.Rep. 313) or that the plaintiff, in point of fact, has sustained an actual loss of business, injury to good will or damages. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973. It is no longer necessary that the parties be engaged in competitive businesses (Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509) or that an actual diversion of business be shown. Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703, 704. At least in some spheres of activity, nowadays, a plaintiff's trade name is entitled to protection against a subsequent user of the name if the designation complained of is so similar to the plaintiff's trade name that there is reasonable likelihood of confusion of source, such that prospective purchasers or clients are likely to regard the name as indicating the source identified by the name and consequently (cause) future injury to good will, reputation or business. * * * Such 'Threatened future injury is sufficient basis for relief.'" See also Osborn Paper Co. v. Carrold Osborn Paper Co., Mo.Sup., 234 S.W.2d 614.

In showing that such deception will be the natural and probable result of the acts committed, actual instances of de-

ception afford the strongest kind of proof of the deceptive tendency of the acts complained of, and that confusion in the future is likely to continue. 87 C.J.S. Trade-Marks, etc. § 92, page 329. Also, while it is presumed that the public uses its senses and takes note of plain differences, it must be remembered that it is by the adoption of something that renders the name similar but not identical that unfair competition usually is attempted to be perpetrated. Similarity may deceive almost as effectually as precise identity, and it is well known that nice and careful discrimination between names cannot be expected from a busy public. Furniture Hospital v. Dorfman, supra. An acceptable test would seem to be: Are the names so similar and their use in the particular circumstances such that ordinary persons, including the incautious, unwary or ignorant but not the careless who make no examination, using ordinary care and caution, likely to be deceived and misled by the similarity and use? Cf. 87 C.J.S. Trade-Marks, etc. § 92, pages 329–331; Shrout v. Tines, supra, 260 S.W.2d 789; National Bank in N. Kansas City v. Bank of North Kansas City, 238. Mo.App. 19, 172 S.W.2d 967, 971; 52 Am.Jur., Trade-Marks, etc., Sec. 128, page 600. In determining whether or not unfair competition exists each case must be judged on its own particular facts.

■ In the instant case the facts are clear and their legal implication unmistakable. Respondent for many years had used a part of its corporate name as its trade name. This trade name, "Better Business Bureau" had acquired a secondary meaning in the public mind in Greater Kansas City, its trade area, and possibly elsewhere. To the public's mind this trade name clearly identified the respondent and respondent's services. In these circumstances appellants, Chappell and Greater Kansas City Service, Inc., commenced a new business in competition with respondent and chose and used in connection therewith and in such a manner a name so similar to respondent's

trade name as to be not only likely to confuse and mislead, but actually to confuse and mislead many of respondent's subscribers and members of the public, into believing they were subscribing to or receiving respondent's services when in fact it was these appellants' services. Under the discussed applicable principles of law, respondent is entitled to its requested protection in the use of the name "Better Business Bureau" as its trade name. While under those principles of law proof of actual intent to deceive is unnecessary, we unhesitatingly say that we would have no difficulty in pointing to many incidents related in the testimony of credible witnesses that would definitely indicate to our minds that such an intent existed from the very beginning of appellant Chappell's action in forming the "Greater Kansas City Service, Inc.," corporation and commencing the use of the fictitious name "Better Business Association of Greater Kansas City" in connection therewith. Cf. American Brewing Co. v. St. Louis Brewing Co., 47 Mo.App. 14.

■ These two appellants have complained that respondent failed to register its trade name under the fictitious names act. Section 417.200 et seq. RSMo1949, V.A.M.S. Respondent is not accused of any bad faith or other wrong in its business use of its trade name, and its failure to register that name is not a defense available here to appellants. Bagby v. Blackwell, 240 Mo.App. 574, 586, 211 S.W.2d 69, 76; Shrout v. Tines, supra; Ditzell v. Shoecraft, 219 Mo. App. 436, 274 S.W. 880. We believe it to be unnecessary to say more on the subject.

The trial judge did not err in finding unfair competition as charged by respondent. His finding to that effect and his injunction to prevent its continuance are in accordance with both the law and the evidence. The judgment of the trial court is, in all respects, affirmed.

All concur.