**Samuel J. TEMPERATO (Plaintiff) Respondent,**

v.

**Vernon E. LaBROT and Alma M. LaBrot (Defendants) Appellants.**

No. 31078.

St. Louis Court of Appeals.

Missouri.

June 12, 1962.

Charles W. Medley, McClintock & Medley, Flat River, for appellants.

Blumenfeld, Abrams & Daniel, Harold J. Abrams, St. Louis, Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

W. M. KIMBERLIN, Special Judge.

This is a suit to enjoin the use by the defendants of the trade name "Dairy Queen" in Flat River, Missouri, upon the ground it constitutes unfair business competition.

Plaintiff, Samuel J. Temperato, brought this suit in two counts against the defendants, Vernon E. LaBrot and Alma M. LaBrot. The first count prayed for an injunction to enjoin the use by the defendants of the name "Dairy Queen" in the operation of their store at Flat River, St. Francois County, Missouri. The second count prayed for damages.

Plaintiff alleged in substance that he was the sole and exclusive owner of the "Dairy Queen" franchise in the territory in question and that the defendants were using the trade name in the operation of their business which constituted unfair competition; that the trade name had acquired a secondary meaning in the minds of the public; that since plaintiff had no adequate remedy at law the defendants should be enjoined from the use thereof.

Separate answers were filed by each of the defendants alleging substantially the same defenses; namely, the contract entered into on April 26, 1952, wherein J. A. LeGrand was first party, Vernon L. LaBrot and Alma LaBrot were second parties, and R. E. Rice and Garnet Rice were third parties, was illegal because it violated the statutes dealing with unlawful restraint of trade and further denied that plaintiff or any other persons owned or had the exclusive right to the use of the trade name "Dairy Queen," following the expiration of a patent on the "Dairy Queen" machine.

Defendants filed a motion for judgment on the pleadings which was by the court overruled. Since this case is being decided on the merits this ruling will not be further discussed.

The case was tried to the court. At the conclusion of the hearing the defendants requested of the trial court findings of fact and declarations of law. These were made by the court and judgment entered for the plaintiff granting injunctive relief on Count I, but against the plaintiff on Count II for damages. Defendants' motion to set aside verdict and to enter judgment in their favor or in the alternative for a new trial or rehearing was overruled. Hence the defendants perfected this appeal.

The facts are that R. E. Rice and Garnet Rice for a number of years prior to this litigation owned the "Dairy Queen" freezer franchise covering a large territory in Missouri and more particularly the territory involved in this controversy. This territory is described as the corporate limits of the City of Flat River, Missouri, and within a four mile radius of the "Dairy Queen" store located therein. The store was owned originally by Paul and Lois Fullop.

The freezer machine was used in the store to make soft ice cream or iced milk on which the patent expired on May 18th, 1954. R. E. Rice, Garnet Rice and the Fullops subsequently sold their interest in the "Dairy Queen" franchise and store in the above described territory to J. A. Le-

Grand. R. E. and Garnet Rice retained royalty rights in the franchise.

On the 26th day of April, 1952, J. A. LeGrand, R. E. Rice and Garnet Rice, and Vernon E. LaBrot and Alma M. LaBrot, his wife, entered into a contract wherein these defendants purchased from J. A. LeGrand the exclusive right to the use of the "Dairy Queen" freezer for the territory above described. Defendants were to continue to make royalty payments to the Rices for the balance due on the freezer and after the freezer was paid for to pay fifteen cents a gallon as a royalty as long as the freezer was in operation and the name "Dairy Queen" used. The contract contained the following clause:

"The parties of the Second Part will purchase all necessary supplies, accessories, and other equipment, and including, but not limited to mix, cones, cartons, topping, flavoring, cleaning supplies, mix cooler, and related compressor, hot-water heater, topping cabinet, and cone trays, at no expense to the Parties of the Third Part; and the Parties of the Second Part recognize the right of the Parties of the Third Part to reserve the right and privilege to select the brands and/or source of mix, topping, flavoring, cartons, or other like commodities used."

A clause very similarly worded was held by the Missouri Supreme Court to have vitiated a contract relative to the sale of a "Dairy Queen" franchise. The style of that case is Temperato v. Horstman, Mo. Sup., 321 S.W.2d 657. It was held in this case that a similar clause constituted an unlawful restraint of trade and of competition under the Missouri Statutes and more particularly was a violation of Section 416.-040, Missouri Revised Statutes of 1949, V. A.M.S. These defendants admit and agree that by virtue of this Supreme Court case this clause makes illegal and void this contract dated April 26, 1952.

On January 15, 1959, R. E. Rice and Garnet Rice sold their interest to J. A. Le-

Grand. Subsequently J. A. LeGrand died and in May of 1960 this plaintiff purchased from R. B. Manley, executor of the LeGrand Estate all of deceased's interest in the "Dairy Queen" franchise for St. Francois County, which included this particular territory involved in this controversy.

Plaintiff testified that he had been in this "Dairy Queen" business since 1949, granting franchises to retail operators, obtaining locations, assisting operators with advertising and training operators in the territory embracing two counties in Illinois and approximately 26 counties in Southeast Missouri, including the County of St. Francois. He further testified that he advertised throughout the area in the form of hand bills, newspapers, radio and television with the aim and intent of enhancing the name "Dairy Queen." That the name, "Dairy Queen" "was advertised nationally" by the Dairy Queen National Development Company.

R. E. Rice testified that the term "Dairy Queen" meant a store having that merchandising name on the window, the appearance of the store and the operator, and the ingredients of the product and the form that they took.

The defendant Vernon E. LaBrot testified he had been running a "Dairy Queen" store serving "Dairy Queen" products in Flat River since 1951. The first operation was under a lease from J. A. LeGrand until the latter part of 1951, and then subsequently in 1952 he purchased from LeGrand the store and franchise under the contract of April 26, 1952.

Plaintiff talked to Vernon LaBrot in June or July of 1960 and told him he had taken over the LeGrand franchise. Plaintiff further told LaBrot that he couldn't operate under the franchise unless defendants paid to him fifteen cents per gallon royalty. The defendants had been paying fifteen cents per gallon royalty before the expiration of the patent and continued so to do after the expiration of the patent until some time in 1958. After plaintiff's discussion with Vernon LaBrot the defendants refused to pay to plaintiff the fifteen cents per gallon royalty, but continued to operate the store in Flat River. The "Dairy Queen" store had two signs upon it, one being a pole sign displaying the name "Dairy Queen" and the other a plastic lettering sign on the building spelling out "Dairy Queen." Defendants continued to use the eight ounce "Dairy Queen" cups. Plaintiff and defendants never entered into any contractual relationship. After defendants refused to pay to plaintiff the royalty plaintiff on November 17th, 1960, through his attorneys requested the defendants by letter to cease the use of the name "Dairy Queen" in their business. Defendants refused to comply and this injunction suit ensued.

The defendant Alma LaBrot has not been active in the business for the last five or six years. She has been teaching school for the last two or three years. She signed the contract of April 26th, 1952, with her husband and with LeGrand and R. E. and Garnet Rice. On May 3, 1959, Vernon LaBrot wrote a letter to Mr. Rice repudiating the contract, stating, "We feel that you people have been well paid for all that we have received and have no intentions of making any further payments."

On this appeal the defendants contend that the judgment of the court below is erroneous because no showing was made that Alama LaBrot was using the trade name "Dairy Queen"; that the defendants are the owners of the trade name "Dairy Queen" in the Flat River area and acquired the name prior to and from the same source that plaintiff claims; and that the name "Dairy Queen" was dedicated to the public on the expiration of the patent on the "Dairy Queen" freezer.

■ This being an injunction suit it was tried to the court and on this appeal it is our duty on review to try the case de novo and reach our own conclusions on the facts and the law. In so doing we give due regard to the findings of the trial chancellor since he had an opportunity to personally

see and hear the witnesses and to judge of the weight and credibility to give to their testimony. The judgment will be not set aside unless clearly erroneous. Sec. 510.310 RSMo 1949, V.A.M.S.; Shrout v. Tines, Mo.App., 260 S.W.2d 782; Davidson v. Fisher, Mo.App., 258 S.W.2d 297; Midland Realty Co. v. Manzella, Mo.App., 308 S.W. 2d 326.

■ As to the defendants' first assignment of error that there is no substantial evidence showing that defendant Alma La-Brot was using the trade name "Dairy Queen" it must be borne in mind that she was a party to and signed the contract of April 26th, 1952, conveying the interest in the franchise and store to her and her husband. There is no evidence she ever executed an instrument divesting herself of any interest acquired under said contract. While she has been teaching school the last two or three years it is fair to infer she did work in the business prior to that time. Furthermore in the letter of May 3, 1959, written by Vernon E. LaBrot to Mr. Rice telling him that he had no intentions of making any further payments, the letter refers to what Vernon and Alma had discussed and used the word "we" twice in the letter which would strongly indicate that Alma was considered to have had an interest in the business of the store and was being consulted by Vernon. The case cited by defendants to sustain their position is not helpful to them. Substantial evidence can be fairly deduced that Alma LaBrot had a sufficient interest in the "Dairy Queen" store to be subject to be enjoined from the use of the "Dairy Queen" trade name.

The next assignment of error by defendants goes to the heart and meat of the case. The defendants admit this contract of April 26th, 1952, was void but contend that the defendants are the owners of the trade name "Dairy Queen" in the Flat River area and acquired said name prior to and from the same source through which plaintiff claims his right to said trade name; that since the contract is illegal plaintiff's rights are no greater than his predecessors Rice and LeGrand and that the parties, since the contract has been executed on both sides, should be left in the position where they put themselves. Defendants cite three cases to sustain this position, namely: Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731; Gilbert v. Edwards, Mo. App., 276 S.W.2d 611, and the Temperato case, supra. Defendants' position is not well founded in that they are claiming ownership of the name "Dairy Queen" by virtue of a contract which they admit is illegal and void and which has been found by the Supreme Court to be inseverable. In the Gardine case a property settlement contract entered into between the wife and husband prior to divorce was held not binding on the wife because of fraud and overreaching on the part of the attorney for the husband. It must be stressed that in the Gardine case the wife was not in pari delicto with reference to the illegal contract and further that no one was seeking to enforce the property settlement contract. Actually in the case at bar the reasoning in the Gardine case is helpful to the plaintiff rather than to the defendants. After a careful analysis of the Gardine case, supra, this court concludes it does not fortify defendants' position in the instant case. Neither does the Gilbert case which is cited by the defendants. In the Temperato case the Supreme Court held the evidence justified injunctive relief regardless of the illegality of the contract and stated that the conduct of the defendants that gave rise to the injunction occurred after the repudiation of the contract. Substantially the same factual situation obtains in the case at bar. All of the acts complained of by plaintiff were committed by the LaBrots after they had repudiated the contract of April 26, 1952.

■ True these three cases announce the general rule that parties to an illegal contract will be left in the position where they put themselves and the law will not afford affirmative relief to them. The holding of this court in no way conflicts with this well established rule of law, because it is not

applicable under the facts of this particular case. Plaintiff acquired his rights for the use of the trade name "Dairy Queen" by reason of the purchase agreement executed by the executor of the J. A. LeGrand Estate pursuant to the order of the Probate Court of St. Francois County, Missouri. This was in May of 1960. There was nothing illegal about this contract. Plaintiff, Temperato, was not in pari delicto with the parties to the illegal contract of April 26, 1952, nor is he seeking to enforce this illegal contract.

■■ As previously stated the acts giving rise to this cause of action occurred after the repudiation of the contract and franchise in this territory and continued until the time they were enjoined by the trial court. The plaintiff was the exclusive owner of the trade name "Dairy Queen" and of the good will attached thereto in the area involved in this controversy. He had the exclusive right to use and enforce this trade name as against these defendants. Plaintiff's cause of action arose by virtue of the common law. As was stated in the opinion in the Temperato case, supra, at (321 S.W.2d l. c. 665):

> "The right to the use of a trade-name or mark, though it be subject to federal registration, does not arise from that registration or from federal law, but from a prior, exclusive appropriation and user under the common law. E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512, 518. And the registration is merely 'prima facie evidence' of the right. Prichard, supra."

The Federal case of Fry v. Layne-Western Co., 8 Cir., 282 F.2d 97, also is authority for this legal principle.

■ This court determines that the continued use by the defendants of the trade name was an unfair trade practice and constitutes unfair competition. Defendants' argument on this point is without merit.

The defendants' last contention is that the name "Dairy Queen" was dedicated to the public upon the expiration of the patent of the "Dairy Queen" freezer and therefore plaintiff is not the owner thereof and would not be entitled to relief.

■ The patent on the freezer machine expired on May 18th, 1954, but that does not mean the product of the freezer machine automatically became a part of the public domain. As was stated in the case of Ross-Whitney Corp. et al. v. Smith Kline and French Laboratories, 9 Cir., 207 F.2d 190, l. c. 194:

> "When a new product or machine is patented and then marketed for the duration of the patent under a particular name, if the consumer so identifies the name with the article itself, without regard to the source of its manufacture, that name may become the generic designation of the product and as such enters the public domain along with the patent at the end of the protected period. The generic designation may have originated as a proper name, or a descriptive name, or even an invented name. However, to the extent that the given name is identified in the mind of the consumer with the source of the product, the name may be protected. 'There is no presumption of law, without proof of the fact * * *, that a name used on a patented article passes to the public on the expiration of the patent.' President Suspender Co. v. MacWilliam, 2 Cir., 1916, 238 F. 159, 163."

■ There is no presumption of law that on the date of the expiration of the patent on the freezer machine that the name "Dairy Queen" became a part of the public domain. The evidence in the instant case proves it did not become a part of the public domain. The evidence demonstrates that the name "Dairy Queen" is not necessarily identified with the product itself, without regard to the source of its manu-

facture or its sale. One of the defendants' witnesses testified that he thought of "Dairy Queen" as "a frozen dessert of any of the brands." Our courts have recognized various other brands. See Temperato v. Horstman, supra.

The evidence indicates that the term is not generic in nature, but that it does have a specific and distinctive meaning relative to iced milk or soft ice cream products. Moreover, the evidence discloses the term "Dairy Queen" means more than the name of a product itself. It signifies a style, mode of operation and sale of the product. Plaintiff testified he trained operators for these stores; that he conducted an advertising and marketing program; that an advertising kit is sent to retail stores containing 670 pieces and all of them are imprinted with the name "Dairy Queen." All this is done to promote uniformity of quality, quantity and style of operation. It can therefore be said and this court concludes that the term has acquired a secondary meaning in the minds of the consuming public and is entitled to be protected against unfair competition. Better Business Bureau of Kansas City Advertising Club, Inc., v. Chappell, Mo.App., 307 S.W.2d 510.

Defendants were actively operating the "Dairy Queen" store. It had displayed on it "Dairy Queen" signs. "Dairy Queen" cups were used. Plaintiff testified he could not obtain another franchise in Flat River with the defendants operating there. The court determines that the acts of the defendants complained of were wrongful. The defendants unfairly used this trade name in the conduct and operation of their business to the prejudice of plaintiff's interests. These acts constituted unfair competition as against this plaintiff. See Triangle Publications, Inc. v. Central Publishing Company, Inc., 117 F.Supp. 824. Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, supra; Shrout v. Tines, supra.

The trade name continued and did not pass to the public at the expiration of the patent. See Cecil R. Medd, et al., v. Boyd-Wagner, Inc., et al., 132 F.Supp. 399. Telechron, Inc. v. Telicon Corp., 198 F.2d 903; 52 American Jurisprudence 611, Sec. 136. The trade name "Dairy Queen" is not in the same classification as the words "cellophane," "shredded wheat," and "castoria," as contended by the defendants. Therefore, this contention that upon the expiration of the patent on the freezer machine the trade name became a part of the public domain is ruled against the defendants.

For the various reasons herein assigned the trial court did not err in permanently enjoining the defendants from the use of the trade name "Dairy Queen" or any other name confusingly similar thereto in the operation of their business in Flat River, Missouri, and accordingly the judgment and decree of the trial court in granting the injunction is by this court affirmed.

ANDERSON, P. J., and MARSHALL CRAIG, Special Judge, concur.